**Paula Diane COON, Respondent,**

v.

**William J. DRYDEN D.O., Appellant,**

**C.K. Fotopoulos, M.D., Appellant,**

**and**

**Lake of the Ozarks General Hospital, Defendant.**

**No. WD 57866.**

Missouri Court of Appeals, Western District.

April 17, 2001.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 29, 2001.

Susan Ford Robertson, Columbia, for appellants.

Christopher J. Jordan, Jefferson City, for respondent.

Before BRECKENRIDGE, P.J., ULRICH, J. and HOWARD, J.

ULRICH, Judge.

William J. Dryden, D.O. and C.K. Fotopoulos, M.D. appeal from the judgment following jury trial in favor of Paula Diane Coon in the amount of $100,000 in her medical malpractice action. The doctors raise four points of error on appeal. They contend that the trial court erred in (1) entering the order and judgment nunc pro tunc and denying their motion to set aside or vacate because the record did not support the court's judgment nunc pro tunc specifying the resolution of the multiple counts in the petition against them; (2) denying their motions for directed verdict and judgment notwithstanding the verdict (JNOV) because Ms. Coon failed to make a submissible case as to causation; (3) denying Dr. Fotopoulos's motion for directed verdict and JNOV because Ms. Coon failed to make a submissible case as to the standard of care applicable to an assisting surgeon; and (4) submitting Instructions No. 8 and 9 because the instructions were vague and confusing and gave the jury a roving commission. The judgment of the trial court is reversed, and the case is remanded for entry of JNOV in favor of Dr. Fotopoulos and for a new trial on the claims against Dr. Dryden.

## Facts

Paula Coon sued Drs. William J. Dryden and C.K. Fotopoulos and another defen-

dant[1] for damages arising from a surgery performed by the doctors on June 23, 1986. In her petition, Ms. Coon alleged medical negligence and failure to obtain an informed consent. The allegations included that the doctors breached their obligation to treat and cure her known, long-standing medical condition involving her female reproductive system by a total hysterectomy with bilateral oophorectomy and salpingectomy;[2] that the doctors violated a well-established standard of medical care by failing to know and consider her medical history before conducting the surgery and, as a result, they performed the wrong surgery to cure her; and that Dr. Dryden failed to obtain an informed consent for the surgery he did perform, a pelvic laparotomy with right oophorectomy and left ovarian wedge resection[3] in that he failed to inform her of alternative surgeries she might receive other than the total abdominal hysterectomy. Ms. Coon alleged that the doctors' negligence directly caused her to suffer injuries including the pain and expense of undergoing the 1986 surgery, the pain and discomfort she experienced from the recurrence of her pelvic infectious disease after the 1986 surgery, and the pain and expense of undergoing another surgery in 1987.

At trial, Ms. Coon's theory of negligence was that she suffered from chronic Pelvic Inflammatory Disease (PID), that in June 1986 she sought from Drs. Dryden and Fotopoulos the definitive cure for the disease, a total abdominal hysterectomy, and that the doctors' failure to perform the surgery constituted negligence. She also alleged that Dr. Dryden was negligent in failing to obtain an informed consent for the surgery that was performed. Ms. Coon testified that since 1973, she had had problems with her female reproductive system including vaginal discharge, abdominal pain, painful sexual intercourse, ovarian cysts, and infections. She saw her family doctor, Dr. Otis Moseley, several times between 1973 and 1986 for these symptoms. Ms. Coon testified that she also experienced additional problems during this time. In 1977, she had a baby and because of infection, the baby was delivered by C-section. In 1978, Ms. Coon had an IUD inserted but it was removed later the same year because of infection. Ms. Coon also had surgery in 1978. She explained that Dr. Fotopoulos performed an exploratory pelvic laporatomy with right salpingectomy[4] and appendectomy due to a large abscess in her right tube. In 1979, Ms. Coon became pregnant. The pregnancy, however, ended in a miscarriage. She had another miscarriage in 1980, and Dr. Fotopoulos performed a D & C at that time.

Ms. Coon testified that she again saw Dr. Moseley in June 1986 when she began experiencing more pain than usual. Dr. Moseley ordered an ultrasound and referred her to Dr. Fotopoulos. Ms. Coon saw Dr. Dryden, who was an employee of Dr. Fotopoulos's professional corporation, for the first time on June 18, 1986. She testified that Dr. Dryden examined her, told her she had "quite a bit of infection," and suggested a hysterectomy. After receiving a second opinion the next day, Ms.

1. Lake of the Ozarks General Hospital's motion for directed verdict was sustained by the trial court precluding submission of the claims against it.

2. The uterus, tubes, and ovaries are removed. The terms "total hysterectomy" or "total abdominal hysterectomy" were also used at trial to mean removal of the uterus, tubes, and ovaries and are similarly used in this opinion.

3. Ms. Coon's right ovary and small portion of her left ovary were removed.

4. Ms. Coon's right tube was removed.

Coon returned to Dr. Dryden's office on June 20, 1986, to set a date for surgery. She testified that she told Dr. Dryden about all of the problems she had had in the past with her reproductive system and that she wanted a total hysterectomy and that Dr. Dryden told her that he would perform a hysterectomy. Prior to the surgery on June 23, 1986, Ms. Coon was presented by hospital employees with blank consent forms, which she signed. She stated that Dr. Dryden only informed her that he would perform a total abdominal hysterectomy, that he never explained to her that alternative surgeries other than a total hysterectomy were possible, and that had she known other surgeries were possible, she would not have consented to surgery because she only wanted a total hysterectomy to cure her chronic problems.

Finally, Ms. Coon testified that when she awoke after the surgery, she learned that the doctors had not performed a total hysterectomy but instead performed a pelvic laparotomy with right oophorectomy and left ovarian wedge resection. She then explained that shortly after the June 1986 surgery, she again began to experience abdominal pain, vaginal discharge, and painful sexual intercourse. She experienced these problems occasionally for the next year and eventually saw Dr. William Marshall, who diagnosed her with chronic pelvic pain and recurrent functional ovarian cysts. In July 1987, Dr. Marshall performed a total hysterectomy. Ms. Coon further testified that she did not experience any of the symptoms after the 1987 surgery and that she believed that the 1987 surgery cured her chronic PID.

Ms. Coon's medical expert, Dr. Arthur Newcomb, explained that the symptoms of chronic PID are lower abdomen and pelvic pain, vaginal discharge, and chronic infection. He opined based on a reasonable degree of medical certainty that Ms. Coon suffered from chronic PID in 1986 and that a total abdominal hysterectomy was the definitive cure for the malady. Dr. Newcomb testified that Drs. Dryden and Fotopoulos breached the applicable standard of care in treating Ms. Coon's chronic PID. He opined that their performance of a pelvic laparotomy with right oophorectomy and left ovarian wedge resection instead of a total abdominal hysterectomy on a patient with chronic PID violated the standard of care. Dr. Newcomb further testified that the doctors breached the applicable standard of care in obtaining an informed consent for a surgical procedure by failing to explain possible alternative surgeries. Dr. Newcomb concluded that as a result of the doctors' negligence, Ms. Coon suffered damages including the pain and expense of undergoing the surgery in 1986, the pain and discomfort she experienced from recurrence of the PID after the 1986 surgery, and the pain and expense of undergoing the second surgery in 1987.

Dr. Dryden testified that Ms. Coon first came to him on June 18, 1986, with complaints of right side pelvic pain and a complex mass on her right ovary that suggested ovarian cancer. Ms. Coon returned to Dr. Dryden's office on June 20, 1986, after receiving a second opinion. On that day, Dr. Dryden recommended to Ms. Coon that she have a total abdominal hysterectomy with bilateral salpingectomy and oophorectomy. Dr. Dryden testified that he explained to Ms. Coon that the purpose of the surgery was the malignancy on her ovary. Dr. Dryden performed surgery on Ms. Coon on June 23, 1986. Dr. Dryden testified that he was the operating surgeon, that he made all of the decisions in the operating room, and that Dr. Fotopoulos only assisted him. Dr. Dryden then explained that once he began the surgery, he discovered that the mass on

Ms. Coon's ovary was not a malignancy but a simple cyst. He decided not to perform a total abdominal hysterectomy because the procedure was not medically indicated and instead performed a pelvic laparotomy with right oophorectomy and left ovarian wedge resection. Dr. Dryden denied that Ms. Coon had chronic PID at the time of the 1986 surgery. He testified that physical findings of the disease such as infection or inflammation would have been present if Ms. Coon suffered from chronic PID and that no such findings were evident when he performed surgery. He further testified that the pathology report from the surgery showed absolutely no evidence of infection or inflammation.

Dr. Fotopoulos's testimony was consistent with Dr. Dryden's testimony regarding his role as assistant. He explained that he was asked to help in the surgery, that he did not know who they were operating on or her medical history, and that he only assisted in the surgery. Dr. Fotopoulos testified that Dr. Dryden made all of the decisions in the surgery, including the decision not to perform a total hysterectomy. Finally, he testified that he observed no evidence of inflammation or infection indicative of PID during the surgery.

Finally, the doctors presented the testimony of their own medical expert, Dr. Donald Patterson, who opined based on a reasonable degree of medical certainty that Ms. Coon did not suffer from PID when she had surgery in June 1986. He explained that no evidence of acute or chronic infection existed at the time of surgery other than the presence of a large cyst on her right ovary.

The doctors made a motion for directed verdict at the close of Ms. Coon's evidence and at the close of all the evidence claiming that Ms. Coon failed to make a submissible case. The motions were overruled, and the case against the doctors was submitted to the jury. The jury returned a verdict in Ms. Coon's favor and awarded her total damages in the amount of $100,000 consisting of $80,000 for past non-economic and $20,000 for past economic damages. The jury apportioned fault at 50% against each doctor. This appeal followed.

## I. Judgment Nunc Pro Tunc

In their first point on appeal, the doctors claim that the trial court erred in entering the order and judgment nunc pro tunc and in denying their motion to set aside or vacate. The trial court originally entered judgment for Ms. Coon on April 21, 1997, following a jury verdict in her favor. The relevant language in that judgment pertaining to the claims against the doctors was:

> IT IS FURTHER ORDERED, ADJUDGED AND DECREED THAT the matter having proceeded with the remaining parties; plaintiff and defendants William J. Dryden and C.K. Fotopoulos, counsel being present, and the jury having heard trial of the matter, the witnesses therein, the arguments of counsel and, upon being duly instructed by the court, and the jury having reached its verdict and that verdict being proper in form and duly signed that:

The doctors appealed the judgment to this court. Staff counsel of this court informed the parties that the judgment did not appear to be final and appealable because it did not dispose of all the claims alleged in the petition. Thereafter, this court entered an order dismissing the appeal for lack of a final, appealable judgment. The trial court filed its judgment nunc pro tunc on October 13, 1999. The judgment nunc pro tunc stated in relevant part:

> WHEREAFTER, the matter having proceeded on Count I (as to physicians)

and Count II with the remaining parties; plaintiff and defendants William J. Dryden and C.K. Fotopoulos, counsel being present, and the jury having heard trial of the matter, the witnesses therein, the arguments of counsel and, upon being duly instructed by the court, and the jury having reached its verdict and that verdict being proper in form and duly signed that:

The doctors contend that the record did not support the court's judgment nunc pro tunc specifying the resolution of the multiple counts in the petition against them. The doctors, therefore, claim that the October 13, 1999 judgment nunc pro tunc should be reversed.

Rule 74.06(a) authorizes a court to correct clerical mistakes in judgments, orders, or other parts of the record and errors therein arising from oversight or omission at any time. Rule 74.06(a). A nunc pro tunc amendment is appropriate only to correct clerical omissions, mistakes, or misprisions to make the record accurately reflect the judgment actually rendered by the court but not faithfully recorded. *Blake v. Irwin*, 913 S.W.2d 923, 933 (Mo.App. W.D.1996). It does not lie to correct judicial errors, mistakes, or oversights, to create a new record, or to enter a judgment never made or one different from that actually rendered. *Id.; Around The World Importing, Inc. v. Mercantile Trust Co., N.A.*, 795 S.W.2d 85, 88 (Mo. App. E.D.1990).

As discussed above, the trial court's April 21, 1997 judgment was not final. If a trial court's judgment does not dispose of all the issues in a case, the trial court retains jurisdiction of the case, and the judgment is subject to revision at any time before the entry of judgment adjudicating all the claims. Rule 74.01(b); *Crangle v.. Crangle*, 809 S.W.2d 474, 475 (Mo. App. E.D.1991). At any time before final judgment, a court may open, amend, reverse, or vacate an interlocutory order. *Around The World Importing*, 795 S.W.2d at 88. Because the April 21, 1997 judgment was not final, the trial court still had jurisdiction over the case to dispose of all issues. While court mislabeled the judgment nunc pro tunc, the error was harmless because the court followed proper procedure. *Id.* The first point is, therefore, denied.

## II. Negligence of Dr. Fotopoulos

In the next point addressed in this appeal, the doctors claim that the trial court erred in denying Dr. Fotopoulos's motion for directed verdict and JNOV because Ms. Coon failed to make a submissible case as to Dr. Fotopoulos's negligence. Ms. Coon submitted her claim against Dr. Dryden on the theory that he failed to perform a total abdominal hysterectomy or, alternatively, that he failed to provide her with information on alternative surgeries. She submitted her claim against Dr. Fotopoulos only on the theory that he failed to perform a total abdominal hysterectomy. The doctors argue that the evidence established that Dr. Fotopoulos only assisted in the operation performed by Dr. Dryden and had no ability to direct or control the manner or type of surgery performed and, therefore, he was not held to the same standard of care as Dr. Dryden.

Motions for directed verdict and JNOV challenge the submissibility of the plaintiff's case. *Kinetic Energy Dev. Corp. v. Trigen Energy Corp.*, 22 S.W.3d 691, 697 (Mo.App. W.D.1999). A case is not to be submitted to the jury unless each fact essential to liability is predicated upon legal and substantial evidence. *Washington by Washington v. Barnes Hosp.*, 897 S.W.2d 611, 615 (Mo. banc 1995). To determine whether the plaintiff has made a submissible case, the appellate court views

the evidence and all reasonable inferences therefrom in the light most favorable to the plaintiff. *Id.* A case will not be withdrawn from the jury unless there is no room for reasonable minds to differ. *Id.* An appellate court will reverse the jury's verdict for insufficient evidence only where there is a "complete absence of probative fact" to support the jury's conclusion. *Seitz v. Lemay Bank and Trust Co.,* 959 S.W.2d 458, 461 (Mo. banc 1998). To make a submissible case in a medical malpractice action, the plaintiff must prove that the defendant failed to use the degree of skill and learning ordinarily used under the same or similar circumstances by members of the defendant's profession and that his negligent act or acts caused the plaintiff's injury. *Washington,* 897 S.W.2d at 615.

 Physicians who are employed together by the patient and who diagnose and treat the case together, without withdrawal by or discharge of either, owe the patient the same duty and are jointly liable for any negligence. *Crump v. Piper,* 425 S.W.2d 924, 928 (Mo.1968); 70 C.J.S. *Physicians and Surgeons* § 84 (1987). Each of the physicians jointly employed or acting jointly in a case is answerable both for his own negligence and vicariously for the negligent acts or omissions of the other. *Id.*

 Under Ms. Coon's theory of liability, the doctors breached a common duty to cure her chronic PID by performing a total abdominal hysterectomy.[5] Ms. Coon testified that since 1973, she suffered from chronic vaginal discharge, abdominal pain, painful sexual intercourse, ovarian cysts, and infection. She testified that in 1986, when she experienced more pain than usual, she saw Dr. Dryden and sought a cure for her chronic problems, a total abdominal hysterectomy. Her medical expert opined that Ms. Coon suffered from chronic PID and that a total abdominal hysterectomy was the cure for PID. Dr. Fotopoulos, however, was not involved in diagnosing Ms. Coon's condition or recommending the appropriate surgery to treat the condition. The evidence revealed that Dr. Fotopoulos did not examine Ms. Coon or talk with her prior to the surgery. No evidence was presented that Dr. Fotopoulos knew that Ms. Coon desired a total abdominal hysterectomy to cure her chronic conditions. The evidence disclosed that Dr. Fotopoulos was recruited shortly before the surgery was to commence to assist Dr. Dryden in performing the surgery that Dr. Dryden determined was appropriate to treat Ms. Coon and that he was unaware of the patient's identity. The evidence also revealed that Dr. Fotopoulos saw no indication during the surgery that the patient suffered from chronic PID necessitating performance of a total hysterectomy and that he later learned that the pathology report was negative. Although Dr. Fotopoulos owed a duty to Ms. Coon, because he was recruited only to assist Dr. Dryden during the surgery, that duty did not extend to deciding whether she suffered from PID beyond the evidence presented during surgery or whether she would experience a total abdominal hysterectomy as she desired to cure the condition. Unlike Dr. Dryden, Dr. Fotopoulos did not know Ms. Coon's medical history or her desire for a particular surgery; he, therefore, did not have the same duty as Dr.

---

5. Joint tortfeasor liability embraces four distinct types of conduct for which the law holds wrongdoers jointly and severally liable for the resultant harm: (1) concerted action or a common plan, (2) common duty, (3) vicarious liability, and (4) single, indivisible harm caused by independent, separate, but concurring torts of two or more persons. *Brickner v. Normandy Osteopathic Hosp., Inc.,* 687 S.W.2d 910, 912 (Mo.App. E.D.1985); *Sall v. Ellfeldt,* 662 S.W.2d 517, 525 n. 4 (Mo.App. W.D.1983).

Dryden. Dr. Fotopoulos had no control over and no authority to contravene Dr. Dryden's decision on what surgery was to be performed. Dr. Fotopoulos's duty to Ms. Coon did not include whatever duty Dr. Dryden may have owed her regarding treatment of her condition or her wish for a total hysterectomy. Instead, Dr. Fotopoulos's duty included performing the surgery that he participated in as an assistant to the required standard of care. Ms. Coon made no complaint against him that the surgery actually performed was done to a substandard. Ms. Coon's only allegation against Dr. Fotopoulos was that he was jointly and severally liable for failing to perform a total abdominal hysterectomy in the 1986 surgery. The evidence demonstrated that Ms. Coon failed to make a submissible case against Dr. Fotopoulos under the theory of joint and several liability. The trial court, therefore, erred in denying his motion for JNOV. Accordingly, the judgment against Dr. Fotopoulos is reversed, and the cause is remanded for entry of JNOV in favor of Dr. Fotopoulos. Because this point is dispositive as to Dr. Fotopoulos, the remaining points are addressed only to the extent that they apply to Dr. Dryden.

### III. Causation

In the next point on appeal, Dr. Dryden claims that the trial court erred in denying his motions for directed verdict and JNOV because substantial evidence to support submission of the case to the jury was not presented. Dr. Dryden alleges that Ms. Coon failed to establish that his non-performance of a total abdominal hysterectomy directly and proximately caused her injuries. Specifically, he contends that the evidence showed two equally plausible and unrelated causes of her continued pain and need for the 1987 surgery.

As discussed in point two above, the appellate court views the evidence and all reasonable inferences therefrom in the light most favorable to the plaintiff in determining whether the plaintiff has made a submissible case. *Washington*, 897 S.W.2d at 615. A case will not be withdrawn from the jury unless reasonable minds would not disagree that the plaintiff has not made a submissible case. *Id.* To make a submissible case in a medical malpractice action, the plaintiff must prove that the defendant failed to use the degree of skill and learning ordinarily used under the same or similar circumstances by members of the defendant's profession and that his negligent act or acts caused the plaintiff's injury. *Id.* In this point, Dr. Dryden attacks Ms. Coon's proof on the element of causation. To establish causation, the defendant's conduct must be both the cause in fact and the proximate, or legal, cause of the plaintiff's injury. *Baker v. Guzon*, 950 S.W.2d 635, 646 (Mo.App. E.D.1997)(citing *Tompkins v. Cervantes*, 917 S.W.2d 186, 190 (Mo.App. E.D.1996)). A defendant's conduct is the cause in fact of the plaintiff's injury where the injury would not have occurred but for that conduct. *Guffey v. Integrated Health Servs. of Kansas City at Alpine North*, 1 S.W.3d 509, 518 (Mo.App. W.D.1999). The test for proximate cause is whether the injury complained of was the natural and probable consequence of the defendant's negligence. *Id.*

Proof of causation in a medical malpractice case requires expert medical testimony "[w]hen there is a sophisticated injury, requiring surgical intervention or other highly scientific technique for diagnosis." *Super v. White*, 18 S.W.3d 511, 516 (Mo.App. W.D.2000)(quoting *Brickey v. Concerned Care of the Midwest, Inc.*, 988 S.W.2d 592, 596 (Mo.App. E.D.1999)). In other words, expert medical testimony

is necessary to establish that the defendant's negligence caused the plaintiff's injury "except where the want of skill or lack of care is so apparent as to require only common knowledge and experience to understand and judge it." *Id.* (quoting *Tillman by Tillman v. Elrod,* 897 S.W.2d 116, 118 (Mo.App. S.D.1995)). When the plaintiff relies on expert testimony to provide evidence as to causation when there are two or more possible causes, that testimony must be given to a reasonable degree of certainty. *Id.* (quoting *Baker,* 950 S.W.2d at 646). When an expert merely testifies that a given act or failure to act "might" or "could" have yielded a given result, though other causes are possible, such testimony is devoid of evidentiary value. *Id.* (quoting *Baker,* 950 S.W.2d at 646). Finally, where the only evidence of a necessary element of a cause of action is self-contradictory, it does not constitute sufficient evidence. *Baker,* 950 S.W.2d at 646 (quoting *Tompkins,* 917 S.W.2d at 190).

■ Viewing all of the evidence and reasonable inferences from the evidence in a light most favorable to Ms. Coon and the jury's verdict, sufficient evidence was presented to support submission of the case to the jury on the element of causation. Considering the allegations in Ms. Coon's petition, expert medical testimony was required and presented to establish the requisite elements of Ms. Coon's medical malpractice action. Ms. Coon's medical expert, Dr. Arthur Newcomb, testified that Drs. Dryden and Fotopoulos breached the applicable standard of care in treating Ms. Coon's chronic PID. He opined that their performance of a pelvic laparotomy with right oophorectomy and left ovarian wedge resection instead of a total abdominal hysterectomy on a patient with chronic PID violated the standard of care. Dr. Newcomb further testified that the doctors breached the applicable standard of care in obtaining an informed consent for a surgical procedure by failing to explain possible alternative surgeries. Finally, Dr. Newcomb testified that the doctors' negligence caused Ms. Coon to suffer injuries including the pain and expense of undergoing that surgery in 1986, the pain and discomfort she experienced from PID between the time of the 1986 surgery and the second surgery in 1987, and the pain and expense of undergoing the second surgery in 1987.

Dr. Dryden contends, however, that the evidence showed that two possible causes of Ms. Coon's injuries other than his negligence in failing to cure her PID existed and that her medical expert, Dr. Newcomb, could not distinguish to a reasonable degree of medical certainty which of the conditions caused her pain and need for the 1987 surgery. He argues that the evidence revealed that at the time of the second surgery in 1987, Ms. Coon had an ovarian cyst on her left ovary and abdominal adhesions that possibly caused her injuries. While Dr. Newcomb acknowledged that Ms. Coon may have suffered pain from the ovarian cyst, he further testified that abdominal adhesions alone would not cause pain unless they obstructed the bowel or some other organ. No evidence of an obstruction was presented. Even assuming Ms. Coon did suffer pain from the cyst on her left ovary, evidence was also presented that she continued to experience pain from PID. Ms. Coon's diagnosis before the 1987 surgery was chronic pelvic pain and recurrent functional ovarian cysts. Dr. Newcomb testified that the diagnosis was consistent with PID, the malady Ms. Coon alleged that the doctors' failed to cure. Dr. Newcomb did not testify that the doctors' breach of the standard of care "might" or "could" have caused Ms. Coon to suffer the pain and expense of the 1986 and the 1987 surgeries and the pain

and discomfort from PID between the two surgeries but that the doctors' negligence "did" cause such injuries regardless of the fact that Ms. Coon may also have suffered pain from the ovarian cyst or that the cyst may also have necessitated the 1987 surgery. Dr. Newcomb's testimony constituted substantial evidence that the doctors' negligence in failing to obtain an informed consent from Ms. Coon and in failing to cure her chronic PID by performing a total abdominal hysterectomy was the cause in fact and the proximate cause of Ms. Coon's injuries. Probative facts to support the jury's conclusion existed, and reversal of the jury's verdict was not warranted. The trial court did not err in denying Dr. Dryden's motions for directed verdict and JNOV. The point is denied.

### IV. Verdict Directing Instruction

■■■ In the final point on appeal, Dr. Dryden claims that the trial court erred in submitting Instruction No. 8, the verdict director. That instruction provided:

> Your verdict must be for plaintiff, if you believe:
>
> First, defendant Dryden failed during surgery upon plaintiff to perform a total abdominal hysterectomy, or failed to provide plaintiff with information on alternative surgeries such that a reasonable person in plaintiff's situation would have consented to an operation which was not a total abdominal hysterectomy; and
>
> Second defendant Dryden was thereby negligent, and
>
> Third, as a direct result of such negligence, plaintiff sustained damage.

Dr. Dryden contends that the instruction failed to submit an ultimate fact that defined the specific theory of negligence and, therefore, the instruction gave the jury a roving commission. He also contends that

the instruction was confusing and ambiguous in its disjunctive form and that the evidence did not support the second alternative theory. At the instruction conference, Dr. Dryden objected to the instruction only on the ground that it gave the jury a roving commission. Rule 70.03 provides in pertinent part:

> Counsel shall make specific objections to instructions considered erroneous. No party may assign as error the giving or failure to give instructions unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection.

Rule 70.03. Because Dr. Dryden failed to object to the instruction on the second ground before the jury retired, he did not properly preserve that contention for appellate review, and this court will not review that claim. *Blackstock v. Kohn,* 994 S.W.2d 947, 953 (Mo. banc 1999).

In his remaining contention, Dr. Dryden argues that the verdict director gave the jury a roving commission because it assumed a disputed fact and permitted the jury to impose liability simply for failing to perform a total hysterectomy. He argues that the instruction should have required a finding as to whether Ms. Coon suffered from PID, which therefore gave rise to the medical need for such surgery.

■■■ "A 'roving commission' occurs when an instruction assumes a disputed fact or submits an abstract legal question that allows the jury 'to roam freely through the evidence and choose any facts which suited its fancy or its perception of logic' to impose liability." *Seitz v. Lemay Bank and Trust Co.,* 959 S.W.2d 458, 463 (Mo. banc 1998)(quoting *Davis v. Jefferson Sav. & Loan Ass'n,* 820 S.W.2d 549, 556 (Mo.App. E.D.1991)). If an instruction fails to advise the jury what acts or omis-

sions of the party, if any, found by it from the evidence, would constitute liability, the instruction is a roving commission. *Centerre Bank of Kansas City, Nat'l Ass'n v. Angle,* 976 S.W.2d 608, 617 (Mo.App. W.D. 1998). A jury instruction may also be considered a roving commission when it is too general or where it submits a question to the jury in a broad, abstract way without any limitation to the facts and law developed in the case. *Id.*

 The Missouri Approved Instructions were designed to preclude the submission of detailed evidentiary facts and to limit the submission only to issues of ultimate fact. *Duren v. Union Pacific R.R. Co.,* 980 S.W.2d 77, 79 (Mo.App. E.D. 1998); *Grindstaff v. Tygett,* 655 S.W.2d 70, 73 (Mo.App. E.D.1983). Rule 70.02(b) requires that where an MAI is modified to fairly submit the issues of a particular case, such modification "shall be simple, brief, impartial, free from argument, and shall not submit to the jury or require findings of detailed evidentiary facts." Rule 70.02(b); *Duren,* 980 S.W.2d at 79. An instruction authorizing a verdict must, however, require a finding of all ultimate facts necessary to sustain the verdict. *Grindstaff,* 655 S.W.2d at 73. Issues of fact that are genuinely disputed need to be submitted to the jury. *Ottinger v. Bolman,* 831 S.W.2d 273, 276 (Mo.App. E.D. 1992); *Jines v. Young,* 732 S.W.2d 938, 949 (Mo.App. S.D.1987). A jury's verdict will be reversed if the average juror would not correctly understand the applicable rule of law and if the offending instruction misdirected, misled, or confused the jury. *Seitz,* 959 S.W.2d at 463; *Duren,* 980 S.W.2d at 80.

Ms. Coon's theory of negligence regarding the first alternative in the instruction was that she suffered from chronic PID; that in June 1986 she sought from Dr. Dryden the definitive cure for the disease, a total abdominal hysterectomy; and that the doctor's failure to perform the surgery constituted negligence. Ms. Coon presented the testimony of Dr. Newcomb, her medical expert, to establish her case. Dr. Newcomb opined that Ms. Coon suffered from chronic PID when she saw Dr. Dryden in June 1986 and that Dr. Dryden breached the standard of care in failing to perform a total abdominal hysterectomy to cure her malady. Under Ms. Coon's theory of negligence, whether she suffered from chronic PID was an ultimate fact. And this ultimate fact was disputed. Dr. Dryden denied that Ms. Coon had chronic PID at the time of the 1986 surgery. He testified that physical findings of the disease such as infection or inflammation would have been present if Ms. Coon suffered from chronic PID and that no such findings were evident when he performed surgery. He also testified that the pathology report from the surgery showed absolutely no evidence of infection or inflammation. Furthermore, Dr. Dryden's medical expert, Dr. Patterson opined based on a reasonable degree of medical certainty that Ms. Coon did not suffer from active or chronic PID in June 1986. Instruction No. 8 removed from the jury's consideration the disputed issue of whether Ms. Coon suffered from chronic PID. By assuming the disputed ultimate fact, the instruction failed to instruct the jury what act by Dr. Dryden would constitute liability. Instead, the instruction compelled the jury to speculate and to employ medical expertise it did not possess to search for any evidence whereby the doctor could be held liable for failing to perform a total hysterectomy. The instruction, therefore, constituted a roving commission and misdirected, misled, and confused the jury. The verdict of the jury is, therefore, reversed, and the case is remanded for a new trial.

In conclusion, the judgment of the trial court is reversed, and the case is remanded for entry of JNOV in favor of Dr. Fotopoulos and for a new trial on the claims against Dr. Dryden.

BRECKENRIDGE, P.J., and HOWARD, J., concur.