**NEWELL RUBBERMAID, INC., Respondent,**

v.

**EFFICIENT SOLUTIONS, INC., Appellant.**

**No. ED 89253.**

Missouri Court of Appeals,
Eastern District,
Southern Division.

Dec. 26, 2007.

Susan Ford Robertson, Columbia, MO, for appellant.

Mark G. Arnold, Clayton, MO, for respondent.

PATRICIA L. COHEN, Chief Judge.

## Introduction

Efficient Solutions appeals from the judgment of the Circuit Court of St. Francois County finding in Newell Rubbermaid, Inc.'s favor on its claims of negligence and breach of contract and awarding damages of $29,000,000. Efficient Solutions contends the trial court erred in: (1) admitting evidence concerning a witness's history of sexual harassment; (2) admitting expert testimony interpreting contractual terms; (3) submitting Newell Rubbermaid's proposed verdict directors; and (4) denying its Motions for Directed Verdict and Judgment Notwithstanding the Verdict. We affirm.

## Facts and Proceedings Below

Newell Rubbermaid owns a factory in Farmington, Missouri that manufactures playground equipment sold under the Little Tikes brand.[1] Efficient Solutions is an energy management company that provides clients with "one-stop shopping" for "consultation, design, installation and maintenance of energy-saving lighting system designs." In 1994, Efficient Solutions sent a lighting-system energy savings and maintenance proposal to Newell Rubbermaid. The proposal required Efficient Solutions to use "demanding installation procedures" including that "each fixture is cleaned" and "every ballast checked."[2] The proposal further acknowledged that as part of the project, Efficient Solutions would "take the lights down, put in a device, and rehang the lights."[3]

Thereafter, Efficient Solutions and Newell Rubbermaid signed a supplemental service contract. The contract incorporated the Master Service Agreement, the Supplemental Service Contract and the Payment Contract/Monthly Service Agreement. Pursuant to the contract, Efficient Solutions agreed to: (1) "inspect all lighting fixtures … for repairs;" (2) advise Newell Rubbermaid about any defect in the lighting; (3) "make necessary repairs" to any defective product "not visible to the naked eye from a ground inspection;" (4) perform such maintenance as necessary "to maintain the System in a safe and proper operating condition;" and use "good workmanship" in rehanging the fixtures.

The high-pressure sodium lights installed by Efficient Solutions reach an internal temperature of 2,000 degree, which is the "upper end of the range of danger." Initially, Newell Rubbermaid's maintenance staff hung the lights. However, under the contract it was Efficient Solutions' responsibility to decide whether the fixtures were properly hung and, if not, rehang the fixtures.

In September 1998, at approximately 3 a.m., a fire broke out in the Newell Rubbermaid factory. The fire engulfed the building and consumed much of the equipment and finished product inside it. Shirley Butler, a Newell Rubbermaid employee, who was assembling playground equipment at the plant the night of the fire, heard, through her hearing protection, a "very loud pop" like "metal hitting

---

1. *Little Tikes* and *Entergy* were the actual parties at the time of the contract. However, for the purpose of clarity, we shall refer to the parties' names on appeal and describe Little Tikes as Newell Rubbermaid and Entergy as Efficient Solutions.

2. A ballast is an elongated metal box through which electrical power to the light bulb runs.

3. Newell Rubbermaid maintenance workers hung the lights in the factory prior to the Newell Rubbermaid/Efficient Solutions contract. Every light in the area where the fire occurred was hung with an eyebolt system and no light had fallen from the roof prior to the fire.

concrete". The fire alarm sounded a few minutes later.

Newell Rubbermaid filed suit against Efficient Solutions for damages sustained by its Farmington facility in the fire. Newell Rubbermaid alleged that Efficient Solutions was negligent and breached provisions of the parties' contract. The parties tried the case before a jury on July 31–August 3, 2006. At trial, Newell Rubbermaid contended that the fire would not have occurred but for Efficient Solutions' negligence and breach of contract.

At trial, two investigators from the State Fire Marshal's office testified regarding their examinations of the Newell Rubbermaid factory following the fire. Both inspectors concluded that the fire originated at the end of the first aisle in the warehouse storage area of the building. They based their conclusion on eyewitness reports of employees and the pattern of burn marks on the floor. Both also opined that the fire started when a light bulb, at a temperature of 2,000 degrees, fell onto some finished equipment and set it on fire. The investigators reached their conclusion after finding a piece of unburnt cardboard underneath a ballast. The investigators testified that the ballast, on top of the cardboard, protected it from burning, although it did have heat damage and the perimeter edges of the cardboard were charred. Moreover, they stated, the plastic on top of the ballast, which had melted into a big "blob" atop it, indicated that the light was on the floor as the fire burned and the plastic melted down on top of it.

Mr. Raymond Arms, Newell Rubbermaid's expert, testified that an installer has to take special precautions because of the high temperature of the lights. In particular, he stated that the installer must consider the "fire load" below the lights— i.e., whether "you have a lot of stuff that will burn fast," such as plastics and cardboard. Mr. Arms contended that Efficient Solutions "should have put safety chains on the fixtures" because the conditions in the factory made an accident "highly foreseeable" and safety chains would have prevented a fire in the case of a light fixture falling. Mr. Arms testified that while he would recommend safety chains on all high-sodium light fixtures, the chains were "necessary" in the storage area, where highly-combustible plastic was stored in highly-combustible cardboard boxes.

Mr. Arms further testified that he believed, to a reasonable degree of certainty, the light fixture fell to the floor because the cover plate was not tightened securely. Mr. Arms stated that to install the high-temperature lights, Efficient Solutions had to remove the cover plate, replace the light and then reinstall the plate. He testified that the "fixture, because of the vibration, was allowed to slide. And it slides real easy. And it just keeps sliding, until the day of the accident, it just fell off." In so concluding, Mr. Arms relied, in part, on the fact that the front panel was not recovered from the fire.

In addition, Mr. Arms testified that, under the contract, Efficient Solutions was required to install the light fixtures in a safe and workmanlike condition. He based his opinion on the contract as well as the codes, standards and accepted practices in the industry. Moreover, Efficient Solutions' own expert, Mr. Dale Derks, also testified that Efficient Solution had an obligation to use "good workmanship." Efficient Solutions crew chief stated that today, it is "pretty much mandatory" to install safety chains on high-intensity light fixtures. He stated that he personally would use a safety chain in all cases and he thought that safety chains were appropriate in the Newell Rubbermaid factory because of the materials stored there. Finally, Mr. Arms testified that the parties' contract had some unique conditions, in-

cluding that the light fixtures were to be removed, modified and installed as Efficient Solutions' property.

Newell Rubbermaid's other expert—Mr. Robert Williamson—concluded that the light fixture caused the fire because the investigators found a light fixture on the ground, beneath debris, in the area of origin and because no one had identified any other possible area of origin. Mr. Williamson also relied upon the fact the fire marshals found one light fixture on the concrete while the other light fixtures had fallen on top of the debris. According to a test he formulated, the light fixture fell after being engulfed in fire for approximately five minutes. Thus, he concluded the different locations of the light fixtures among the debris also supported a finding that a fallen light fixture started the fire.

Newell Rubbermaid submitted its case to the jury on two theories: breach of contract and negligence. Both verdict directors hypothesized that Efficient Solutions had a duty to: (1) inspect the features and make any necessary repairs; (2) install the fixtures safely; and (3) maintain them in a safe and proper fashion. The jury found in favor of Newell Rubbermaid and awarded it $29,000,000 in damages. Efficient Solutions appeals.

### Standard of Review

■ "The admission or exclusion of evidence, especially expert evidence, is a matter of trial court discretion." *Twin Chimneys Homeowners Ass'n v. J.E. Jones Const. Co.*, 168 S.W.3d 488, 504 (Mo. App. E.D.2005). "We review only for a manifest abuse of discretion." *Id.* We presume that the ruling is correct and the "appellant bears the burden of showing the trial court abused its discretion and that they have been prejudiced by the abuse." *Id.* A trial court abuses its discretion when the "judgment is clearly against the logic of the circumstances and is so arbitrary

and unreasonable as to shock one's sense of justice and indicates a lack of careful consideration." *Boyer v. Sinclair & Rush, Inc.*, 67 S.W.3d 627, 634 (Mo.App. E.D. 2002). Moreover, it is well established that the extent and scope of cross-examination is within the trial court's sound discretion and will not be disturbed unless an abuse of discretion is clearly shown. *Miller v. SSM Health Care Corp.*, 193 S.W.3d 416, 421 (Mo.App. E.D.2006).

■ We review challenges to jury instructions for error that materially affected the merits of the case, reviewing the evidence in the light most favorable to the submission of the instruction. *Envtl. Prot., Inspection, & Consulting, Inc. v. City of Kansas City*, 37 S.W.3d 360, 365–66 (Mo.App. W.D.2000). We will only reverse a verdict if the "instruction misdirected, misled, or confused the jury" and resulted in error that materially affected the outcome of the matter. *Harvey v. Washington*, 95 S.W.3d 93, 97 (Mo. banc 2003).

■ The purpose of motions for directed verdict and JNOV is to "challenge the submissibility of the plaintiff's case." *Coon v. Dryden*, 46 S.W.3d 81, 88 (Mo. App. W.D.2001). "A case is not to be submitted to the jury unless each fact essential to liability is predicated upon legal and substantial evidence." *Id.* In analyzing whether the plaintiff made a submissible case, we view the evidence, and all reasonable inferences therefrom, in the light most favorable to the plaintiff. *Id.* at 88–89. It is well established that "[i]nsufficient evidence means a complete absence of probative fact to support the jury's conclusion." *Harvey*, 95 S.W.3d at 96. We will not overturn a verdict unless there is a complete absence of probative fact to support it and no reasonable jury would differ as to the outcome of the case. *Coon*, 46 S.W.3d at 88–89.

## Analysis

### A. Impeachment/Rebuttal Evidence

In point one, Efficient Solutions contends the trial court erred in admitting impeachment and rebuttal evidence regarding Donnie Doggett, a former Newell Rubbermaid employee, who Newell Rubbermaid discharged for the sexual harassment of two co-workers. More specifically, Efficient Solutions argues that the evidence served no purpose other than to anger and inflame the jury against Efficient Solutions. Newell Rubbermaid rejoins that the evidence was relevant to the witness' bias and the decision regarding whether to admit or exclude such evidence rests within the sound discretion of the trial court.

Efficient Solutions tendered Mr. Doggett as a fact witness to testify regarding his observations on the night of the fire. Mr. Doggett testified that he saw a light somewhere above the smoke after the fire started. During Newell Rubbermaid's cross-examination of Mr. Doggett, he stated that he was fired for sexual harassment. Mr. Doggett acknowledged that he had a difficult time finding steady work after he was discharged from Newell Rubbermaid and that it made him angry, although he did not bear any ill-will towards Newell Rubbermaid. However, Mr. Doggett further testified that the allegations against him were untrue. Specifically, he denied that, on the day he was suspended, his supervisor saw him "dry-humping" a woman who had bent over to pick up cardboard on the floor. Moreover, Mr. Doggett contended that if his supervisor were to testify that he witnessed Mr. Doggett "dry-humping" a co-employee, he would be lying.

Efficient Solutions objected to Newell Rubbermaid's cross-examination of Mr. Doggett as irrelevant and improper character evidence. It contended that once Mr. Doggett testified that he bore no ill-will towards Newell Rubbermaid, Newell Rubbermaid was foreclosed from probing further. The trial court overruled the objection and stated that Newell Rubbermaid was not bound by Mr. Doggett's statement because it had a right to establish Mr. Doggett's bias.

Newell Rubbermaid then called Bernie Thebeau, Mr. Doggett's former supervisor, as a rebuttal witness to testify regarding Mr. Doggett's termination. Mr. Thebeau testified as follows:

I was just doing my night rounds, because I had four different departments that I was managing. And as I kind of come in through the back way, I saw Donnie behind some boxes, by one of the machines. And apparently one of the girls had come over to get some supplies from one of the machines to the other. And she bent over to get the cardboard. And while she bent over, he had just come behind her and was humping her. . . . I walked over to where they were at. . . . I basically asked, "What the heck is going on? What are you doing?" And he said, "I do it all the time. This goes on all the time."

Mr. Thebeau then testified that when he returned to his office to retrieve a pencil and paper for the female employee to use to make a statement, he looked out the window and saw Mr. Doggett behind another female employee engaged in identical activity. Mr. Thebeau testified that the woman "had bent over to clean some parts, and he had come up behind her and was humping her." After conducting an eight-day investigation, Newell Rubbermaid discharged Mr. Doggett.

"As a general proposition, the credibility of witnesses is always a relevant issue in a lawsuit." *State v. Harrison*, 213 S.W.3d 58, 73 (Mo.App. S.D.2006). "Anything that has the legitimate tendency of throwing light on the accuracy, truthful-

ness, and sincerity of a witness is proper for determining the credibility of the witness." *Id.* "The jury is entitled to know information that might affect the credibility of the witness, and the weight to be given his testimony." *Miller*, 193 S.W.3d at 421.

Moreover, exploring bias is essential to the jury's process of determining the "appropriate weight to be given the whole of the witness' testimony." *See State v. Hedrick*, 797 S.W.2d 823, 826 (Mo. App. W.D.1990). "If a witness is hostile, biased, or prejudiced against a party, the substance of his testimony may be affected by his other than impartial state of mind. In such an instance, that party should be afforded an opportunity to display before an uninformed jury the bias, hostility, or prejudices held by the witness against that party." *Id.* The "facts and circumstances showing bias may be shown specifically, and may be shown either by cross-examination of the witness sought to be impeached or by extrinsic evidence." *Id.* Lastly, the "trial judge's powers to control the incidents of a trial are adequate to prevent the trial going so far afield that the central issue is lost from view. It has been noted that the trial court has responsibility for seeing that the sideshow does not take over the circus." *Id.*

Here, Newell Rubbermaid proffered the evidence to establish that Mr. Doggett's testimony was a product of bias. Prior to his termination, Mr. Doggett never told anyone that the light in question was still attached at the time of the fire. However, after Efficient Solutions fired him, Mr. Doggett stated that he saw the light shining over the fire.

Notably, Efficient Solutions does not contend that the trial court allowed the impeachment evidence to go too far, but rather, asserts that the trial court should not have admitted *any* of the evidence. However, "[i]t is one thing ... to call a halt to over-extended, irrelevant or repetitive cross-examination-which is within the trial court's discretion-and quite another to rule off limits an entire area of inquiry which has a bearing upon the witness's veracity." *Hedrick*, 797 S.W.2d at 828. While the "trial court may properly limit the scope and extent of cross-examination into the witness' bias or prejudice, ... is not within the trial court's discretion to prevent it entirely." *Id.*

Here, the record establishes that the evidence was relevant to establish Mr. Doggett's bias. Mr. Doggett was one of only two witnesses who testified that the light in question was still burning at the time of the accident and therefore, his credibility was highly relevant to the jury in determining the cause of the fire. Newell Rubbermaid neither impermissibly exceeded the scope of cross-examination by introducing the evidence nor gave it undue explanation or weight. In fact, while Newell Rubbermaid did raise Mr. Doggett's bias against his former employer as an issue in its closing argument, it did not make a single mention of the evidence proffered to show that bias during the entirety of its closing. Accordingly, the trial court did not err in admitting the evidence illustrating Mr. Doggett's bias. Point denied.

### B. Expert Testimony Regarding Contractual Interpretations

In point two, Efficient Solutions contends the trial court erred in admitting testimony from Newell Rubbermaid's expert that Efficient Solutions had a duty to install safety chains. More specifically, Efficient Solutions asserts that the expert arrived at his conclusion that Efficient Solutions should have installed safety chains by improperly construing unambiguous language in the parties' contract. Newell Rubbermaid responds that the expert relied on industry standards based upon the

conditions in Newell's plant rather than the language in the contract.[4]

Here, the record reflects that the expert based his opinion upon industry standards, the conditions of the factory and applicable industry codes, rather than the contract. Moreover, in contending that Newell Rubbermaid's expert construed the contract, Efficient Solutions relies upon the portion of the record in which the expert testified that Efficient Solutions should have installed safety chains. Indeed, although Newell Rubbermaid attempted to proffer the expert's opinion regarding the effect of the contractual language, the trial court excluded such testimony following Efficient Solutions' objection.

Efficient Solutions also asserts that the expert testified that as a result of unique conditions in the contract—such as the fact that the light fixtures were to be removed, modified and installed—Efficient Solutions had a contractual duty to install safety chains. However, the only portion of the expert's testimony that refers to the contractual language is the testimony regarding Efficient Solutions' undisputed obligation to rehang the fixtures "in a safe and workmanlike manner." Efficient Solution's own expert testified that it had an obligation under the contract to rehang the fixtures "using good workmanship." Point denied.

## C. Instructional Error

In point three, Efficient Solutions contends the trial court erred in overruling its

---

**4.** In arguing that the trial court erred in permitting the expert to construe the unambiguous contract, Efficient Solutions relies upon *Union Electric Co. v. Metropolitan St. Louis Sewer District*, No. ED88123, 2007 WL 1341820, at *3 (Mo.App.E.D. May 9, 2007). However, we may not consider that decision as the opinion was vacated by transfer to the Supreme Court.

**5.** Efficient Solutions proposed breach of contract verdict director stated:

objections to Newell Rubbermaid's proposed verdict directors because the instructions offered were roving and failed to include ultimate disputed facts. Specifically, Efficient Solutions asserts that the proposed verdict directors failed to include the ultimate factual questions necessary to establish liability—namely, whether the failure to install safety chains or properly install the lights caused the fire.

■■ In addition, Efficient Solutions contends that the verdict directors failed to properly confine the jury to issues that could constitute negligence or breach of contract resulted in a roving commission. Specifically, it asserts that the verdict directors' alternative disjunctive submissions failed to give the jury guidance upon which ultimate facts determined liability and should have been limited to whether Efficient Solution's failure to install safety chains or to properly install the lights constituted negligence and/or breach of contract. Newell Rubbermaid responds that the trial court correctly instructed the jury on the ultimate facts that it needed to prove.

Newell Rubbermaid submitted its breach of contract claim under a modified MAI 26.02 and its negligence claim under a modified MAI 17.02. Instruction No. 7 stated:[5]

> On the plaintiff's claim for breach of contract your verdict must be for plaintiff if you believe:

> Your verdict must be for Plaintiff if you believe:
> First,
> Defendant did not properly install a light fixture, or;
> Defendant did not install safety chains; and
> Second, because of such failure, Defendant's contractual obligations were not performed, and
> Third, Plaintiff was thereby damaged.

First,

Defendant did not inspect the lights for defects in a good and workmanlike manner and make any necessary repairs, or; Defendant did not install the light in a good and workmanlike manner with regard to its location and the activities and storage in the area underneath the light, or;

Defendant did not maintain the light in a proper, safe and secure operating condition.

Second, because of such failure, defendant's contract obligations were not performed, and

Third, plaintiff was thereby damaged.

Instruction No. 9 stated: [6]

On plaintiff's negligence claim, your verdict must be for plaintiff if you believe:

First,

Defendant did not inspect the lights for defects in a good and workmanlike manner and make any necessary repairs, or;

Defendant did not install the light in a good and workmanlike manner with regard to its location and the activities and storage in the area underneath the light, or;

Defendant did not maintain the light in a proper, safe and secure operating condition.

Second, defendant, in any one or more of the respects submitted in paragraph First, was thereby negligent, and

Third, as a direct result of such negligence, plaintiff sustained damage.

 The propriety of a jury instruction is a question of law. *Twin*

*Chimneys Homeowners Ass'n v. J.E. Jones Const. Co.*, 168 S.W.3d 488, 497 (Mo. App. E.D.2005). A "proper instruction submits only the ultimate facts, not evidentiary details, to avoid undue emphasis of certain evidence, confusion, and the danger of favoring one party over another." *Id.* at 497–98. Thus, we review to determine whether the instruction follows the substantive law of the plaintiff's claim and can be easily understood by the jury. *Id.* at 498. In determining the propriety of an instruction, "we view the evidence most favorably to the instruction, disregard contrary evidence, and reverse where the party challenging the instruction shows that the instruction misdirected, misled, or confused the jury, and there is a substantial indication of prejudice." *Id.*

 A verdict director is improperly submitted if it assumes a disputed fact because its purpose is to "hypothesize propositions of fact to be found or rejected by the jury." *Lasky v. Union Elec. Co.*, 936 S.W.2d 797, 800 (Mo. banc 1997). Thus, a verdict director must contain all of the elements or ultimate issues necessary to plaintiff's cause of action. *Harvey*, 95 S.W.3d at 98. A determination of the ultimate facts must be made on a case-by-case basis. *Ostrander v. O'Banion*, 152 S.W.3d 333, 336–40 (Mo.App. W.D.2004).

 An instruction results in a "roving commission" when it assumes a disputed fact or posits an "abstract legal question that allows the jury to roam freely through the evidence and choose any facts which suited its fancy or its perception of logic to

---

**6.** Efficient Solutions' proposed negligence verdict director stated:

In your verdict you must assess a percentage of fault to Defendant, whether or not Plaintiff was partly at fault, if you believe:
First, either:
Defendant failed to properly install a light fixture, or

Defendant failed to install safety chains, and
Second, Defendant, in any one or more of the respects submitted in paragraph First, was thereby negligent, and
Third, as a direct result of such negligence, Plaintiff sustained damage.

impose liability." *Duren v. Union Pac. R. Co.,* 980 S.W.2d 77, 79 (Mo.App. E.D.1998) citing *Seitz v. Lemay Bank & Trust,* 959 S.W.2d 458, 463 (Mo. banc 1998) (internal citations omitted). As we noted in Duren:

> [A] proper instruction submits only the ultimate facts, not evidentiary details, to avoid undue emphasis of certain evidence, confusion, and the danger of favoring one party over another. Rule 70.02(b) requires that where an MAI is modified to fairly submit the issues of a particular case, then such modifications shall be simple, brief, impartial, free from argument, and shall not submit to the jury or require findings of detailed evidentiary facts.

*Id.* (Internal citations omitted).

As to Instruction 7, the verdict director for breach of contract, the instruction adequately followed the substantive law and hypothesized the ultimate facts necessary to establish Efficient Solutions' obligations under the contract and breach thereof. The ultimate facts were that Efficient Solutions failed to: (1) inspect the lights for defects and make necessary repairs; (2) install the lights in a good and workmanlike manner; and (3) maintain the lights in a safe and secure operating condition. Instruction 7 was based on and specifically tracked the language of the parties' agreement.

As to Instruction 9, the verdict director for negligence, the instruction followed the substantive law on negligence and hypothesized the ultimate facts necessary to establish Efficient Solutions' standard of care and breach thereof. The ultimate facts were that Efficient Solutions breached the applicable standard of care because it did not: (1) inspect the lights for defects and make necessary repairs; (2) install the lights in a good and workmanlike manner; and (3) maintain the lights in a safe and secure operating condition.

Neither instruction assumed a disputed fact or submitted an abstract statement of law. Nor did the instructions fail to advise the jury what conduct by Efficient Solutions would constitute negligence or result in a breach of the parties' contract. Moreover, the alternative verdict directors submitted by Efficient Solutions contained evidentiary, rather than ultimate, issues and therefore, it would have been improper to submit them to the jury. Accordingly, the trial court did not err in submitting Instructions No. 7 and 9 to the jury. Point denied.

**D. Motions for Directed Verdict and Judgment Notwithstanding the Verdict**

In point four, Efficient Solutions contends the trial court erred in denying its Motions for Directed Verdict and Judgment Notwithstanding the Verdict (JNOV) because Newell Rubbermaid failed to make a submissible case for either breach of contract or negligence. Specifically, Efficient Solutions asserts that there was no substantial evidence adduced showing that it had a duty to install safety chains or that it failed to properly re-hang the lights after installing the Efficient Solutions product. Moreover, it argues, there was no substantial evidence that these failures caused Newell Rubbermaid's damages.

First, Efficient Solutions contends that Newell Rubbermaid failed to prove that it had a common law duty to install safety chains. In a negligence case, a plaintiff must prove that the "defendant had a duty to protect the plaintiff from injury, the defendant failed to perform that duty, and the defendant's failure proximately caused injury to the plaintiff." *Lopez v. Three Rivers Elec. Co-op., Inc.,* 26 S.W.3d 151, 155 (Mo. banc 2000). The existence of a duty is a question of law. *Id.* Moreover, the "judicial determination of the existence of duty [rests] on sound public policy." *Hosto v. Union Elec. Co.,*

51 S.W.3d 133, 139 (Mo.App. E.D.2001) (citing *Hoover's Dairy, Inc. v. Mid–America Dairymen, Inc.*, 700 S.W.2d 426, 431 (Mo. banc 1985)).

It is well established that "whether a duty exists in a given situation depends upon whether a risk was foreseeable." *Lopez*, 26 S.W.3d at 155–56. As the Supreme Court has stated:

[I]f there is some probability or likelihood, not a mere possibility, of harm sufficiently serious that [an ordinary person] would take precautions to avoid it, then the failure to do so is negligence. While the likelihood of a future happening is the test of a duty to anticipate, this does not mean the chances in favor of the happening must exceed those against it. The test is not the balance of probabilities, but of the existence of some probability of sufficient moment to induce the reasonable mind to take the precautions which would avoid it.

*Zuber v. Clarkson Const. Co.*, 363 Mo. 352, 251 S.W.2d 52, 55 (1952). Accordingly, "[i]n considering whether a duty exists in a particular case, court[s] must weigh the foreseeability of injury, likelihood of injury, magnitude of burden of guarding against it and consequences of placing that burden on defendant." *Hosto*, 51 S.W.3d at 139.

Here, Efficient Solutions, an expert in lighting consultation, design, installation and maintenance, had the responsibility to inspect the lights in Newell Rubbermaid's factory and determine whether the fixtures were properly hung and, if not, to rehang them. The record contains ample evidence illustrating that high-pressure sodium lights reach an internal temperature of 2,000 degrees. The lights, moreover, were placed above a number of highly combustible items—including densely packed cardboard boxes and large plastic toys. The record includes sufficient evidence from which a jury could infer that if one of the high-pressure sodium lights fell on these combustible materials, they would catch fire immediately. Moreover, the record contains evidence establishing the probability that these lights could and would fall under conditions similar to those in the factory and that a safety chain was an inexpensive and simple way to prevent a severe risk of fire.

Efficient Solutions also contends that the trial court erred in denying its Motions for Directed Verdict and JNOV because Newell Rubbermaid failed to adduce substantial evidence that Efficient Solutions had a contractual duty to install safety chains. Newell Rubbermaid rejoins that it demonstrated that the contract required Efficient Solutions to inspect the lighting system and correct any deficiencies.

To succeed in a breach of contract claim, plaintiff must prove that: (1) a contract existed between plaintiff and defendant; (2) plaintiff had certain rights and defendant had certain obligations or duties under the contract; (3) defendant breached the contract; and (d) plaintiff suffered damages therefrom. *Taryen Dev., Inc. v. Phillips 66 Co.*, 31 S.W.3d 95, 104 (Mo. App. E.D.2000).

Here, the record reflects that Section 9(a) of the contract required Efficient Solutions to "inspect all lighting fixtures at the Location for repairs." Efficient Solutions' proposal stated that Efficient Management provided its clients with "one source for consultation, design, installation, and maintenance of energy-saving lighting system designs." The proposal also offered Efficient Solutions' "demanding installation procedures," which included checking every ballast and a "total facility re-lamp." According to Efficient Solutions' own expert, one of its duties under

the contract was to advise Newell Rubbermaid if there was any defect in the lighting. Moreover, the service contract stated that "[i]f any defects are found while cleaning the fixtures, which would not be obvious to the unaided eye from an on-ground visual inspection [Efficient Solutions], shall make the necessary repairs." Further, the service contract provided that Efficient Solutions "shall schedule and perform preventative maintenance calls as it deems necessary to maintain the System in a safe and proper operating condition." Finally, several Efficient Solution employees admitted that they were required to rehang the lights safely. Thus, Efficient Solutions had a duty under the contract to inspect the lighting system and correct any deficiencies. Accordingly, the trial court did not err in denying Efficient Solutions' Motions for Directed Verdict and Judgment Notwithstanding the Verdict.

 Finally, Efficient Solutions asserts that the trial court erred in denying its Motions for Directed Verdict and Judgment Notwithstanding the Verdict because Newell Rubbermaid failed to adduce substantial evidence that Efficient Solutions failed to properly re-hang or maintain the lights and that such failure caused Newell Rubbermaid's damages. Efficient Solutions argues that substantial evidence does not support a finding that Efficient Solutions' conduct caused the lights to fall, and therefore, Newell Rubbermaid failed to prove Efficient Solutions caused its injury.

 "In all tort cases, the plaintiff must prove that each defendant's conduct was an actual cause, also known as cause-in-fact, of the plaintiff's injury." *City of St. Louis v. Benjamin Moore & Co.*, 226 S.W.3d 110, 113 (Mo. banc 2007). As the Missouri Supreme Court has noted, "any attempt to find liability absent actual causation is an attempt to connect the defendant with an injury or event that the defendant had nothing to do with." *Id.* at 113–14. Thus, in most cases, the plaintiff must prove that his or her damages "would not have occurred 'but for' the defendant's conduct." *Id.* at 114.

Despite Efficient Solutions contentions, under Newell Rubbermaid's theory of the case, Efficient Solutions could have breached the contract and acted negligently either by causing the light to fall or by failing to inspect and secure the light fixtures in order to prevent them from falling. Here, a Newell Rubbermaid employee testified that she heard a loud noise of metal hitting the concrete floor minutes before the alarm sounded. Another employee, who was wearing ear protection at the time, stated that the fire started at the end of the hall, where the broken light fixture was eventually found under a "blob" of melted plastic. Both fire marshals testified that the origin of the fire was at the end of the first aisle in the storage area, based on statements from eyewitnesses and the burn patterns on the floor.[7] Moreover, both fire marshals concluded to a reasonable degree of certainty that a falling light caused the fire. They testified that the light fixture was at the bottom of the fire debris, right at the point of origin, which indicated that the light fell before the fire started and was a good indication of causation. The fire marshal in charge of the investigation stated that there was unburned cardboard beneath the fixture and melted plastic on top, which illustrated that the fixture was on the floor from the inception of the fire.

---

**7.** Efficient Solutions argues that the fire marshals' testimony is not credible, and therefore should be discounted, because their initial report did not state that a fallen light caused the fire. However, the "question of credibility is one to be left to the trier of fact[.]" *Welty v. State Bd. of Chiropractic Exam'rs.,* 759 S.W.2d 295, 298 (Mo.App.W.D.1988).

Moreover, the record contains no evidence of smoking or other sources of ignition at the point of origin and the marshals testified that the fire spread too fast to be caused by anything but the fallen light. Finally, in other places in the factory, the fire marshals found lighting fixtures on top of the debris, while at the point of origin, the light was under a "blob" of melted plastic. Thus, the record reflects that Newell Rubbermaid proffered sufficient evidence to establish that Efficient Solutions' failure to inspect the lighting system and correct any deficiencies caused the fire. Accordingly, the trial court did not err in denying Efficient Solutions' Motions for Directed Verdict and Judgment Notwithstanding the Verdict. Point denied.

### Conclusion

The judgment of the trial court is affirmed.

ROBERT G. DOWD, JR. and ROY L. RICHTER, JJ., Concur.