Karen F. TRIMBLE, d/b/a A–Advanced Bail Bonds, Respondent/Cross–Appellant,

v.

Timmi Ann PRACNA, Appellant/Cross–Respondent.

No. SC 86269.

Supreme Court of Missouri, En Banc.

July 12, 2005.

Rehearing Denied Aug. 2, 2005.

709

Charles B. Cowherd, Springfield, MO, for Appellant/Cross–Respondent.

R. Lynn Myers and Richard D. Crites, Springfield, MO, for Respondent/Cross–Appellant.

MARY R. RUSSELL, Judge.

This appeal and cross-appeal follow a judgment awarding damages for breach of a bail bond contract and fraud on the retrial of a suit brought by bail bondsman Karen Trimble ("Bondsman") against Treveillian Heartfelt[1] ("Accused") and his former girlfriend, Timmi Ann Pracna ("Girlfriend"). After opinion by the Court of Appeals, Southern District, this Court granted transfer. Mo. Const. art. V, sec. 10. The judgment is affirmed in part, as modified, and reversed in part.

Girlfriend contracted with Bondsman to obtain bail bonds to secure Accused's release from jail. Girlfriend paid a $7,500 bond fee for the initial two bonds totaling $75,000 and pledged real estate as collateral. As Accused was leaving the jail, he was rearrested on a new fugitive warrant stemming from Idaho parole violations. The bond for this charge was set at $250,000, the contract was amended, and Bondsman posted this bond as well. Ultimately, Accused failed to appear at a court hearing for which the bonds were posted and significant efforts were made to procure his presence in court. Bondsman brought suit to recover under the bond contract.

This case has a chaotic and complex history, including two trials and two appeals before reaching this Court. The procedural history through the first appeal can be found in *Trimble v. Pracna,* 51 S.W.3d 481 (Mo.App.2001) (hereinafter *Trimble I*). In *Trimble I,* the court of appeals remanded the case for a second trial to determine Bondsman's contract damages and to consider her fraud claims.

## I. Second Trial

On remand, the trial court allowed the parties to amend their pleadings, but directed a verdict on liability on Bondsman's new breach of contract claim based on the holding in *Trimble I.*

Bondsman submitted two verdict directors to the jury—one for damages for breach of contract and the other for damages for fraud. The jury returned verdicts in Bondsman's favor, awarding her damages of $144,420 for breach of contract, $28,900 for fraud, and $146,000 as punitive damages on the fraud count. Bondsman was awarded $48,380.70 for attorney fees for the breach of contract claim, expenses of $12,324.67 on that claim, and $5,804.55 for costs. The trial court found that Girlfriend was "entitled to a set-off of $58,500 for amounts already paid" and awarded a credit for the set-off amount. In sum, Bondsman was awarded a total judgment of $152,429.92[2] on her breach of contract claim and $174,900[3] on her fraud claim. Both parties now appeal.

## II. Did this case present the issue of election of inconsistent theories?

Before addressing the parties' points, this Court addresses the issue of election of inconsistent theories of recovery. The issue of election of inconsistent theories has caused confusion in this case and others.[4] For that reason, this Court reiterates the doctrine as last discussed in *Whittom v. Alexander–Richardson Partnership,* 851 S.W.2d 504, 506–07 (Mo. banc 1993).

---

1. Defendant Heartfelt defaulted on the first petition and is not a party to this appeal.

2. [$144,420 (damages) + $66,509.92 (fees, expenses, costs) ]-$58,500 ("set-off" credit) = $152,429.92 (both defendants are jointly and severally liable for this sum).

3. $28,900 (actual damages) + $146,000 (punitive damages) = $174,900 (only Girlfriend is liable for this sum).

4. Neither party raises the issue of inconsistent theories, but this issue was the focus of the court of appeals opinion.

■ In *Whittom*, this Court outlined the distinction between the doctrine requiring election of remedies and the doctrine requiring election of inconsistent theories of recovery. *Id.* It was noted that the election of remedies doctrine is a doctrine of estoppel, basically providing that where a party has the right to pursue one of two inconsistent remedies and makes an election, institutes suit, and prosecutes it to final judgment, that party cannot thereafter pursue another and inconsistent remedy. *Id.* at 506. Entirely distinct from the election of remedies is the election of inconsistent theories of recovery. *Id.* at 506–07. Under this doctrine, a party must elect between theories of recovery that are inconsistent, even though pled together as permitted by Rule 55.10, before submitting the case to the trier of fact. *Id.* If two counts are so inconsistent that proof of one necessarily negates, repudiates, and disproves the other, it is error to submit them together. *Id.* at 507. The determination of when two theories are inconsistent is heavily dependent upon the facts of the case. *Id.* Theories are inconsistent and require an election only if, in all circumstances, one theory factually disproves the other. *Id.*

■ There was no issue of inconsistent theories of recovery in this case. A party who fraudulently induces another to contract and then also refuses to perform the contract commits two separate wrongs, so that the same transaction gives rise to distinct claims that may be pursued to satisfaction consecutively. *Davis v. Cleary Bldg. Corp.*, 143 S.W.3d 659, 669 (Mo.App. 2004).

In *Davis,* the court of appeals found that the plaintiffs' claims for breach of contract and fraudulent misrepresentation were not inconsistent legal theories and, as such, did not require election of remedies or election of recovery. *Id.* at 669–70. The court stated that the plaintiffs could pursue all of their claims because actual damages for breach of contract and benefit-of-the-bargain damages for fraud were not inconsistent remedies in that they both rest on affirmance of the contract. *Id.* at 669.

■ Bondsman could sue Girlfriend for breach of the bargain damages resulting from fraud in inducing her to contract and also recover additional damages, if any, resulting from breach of contract, as both rest on affirmance of the contract. A plaintiff is only entitled to be made whole once, however, and the election of theories doctrines are intended to prevent a plaintiff from recovering more than one full recovery for the same harm. *Id.* at 670. If a plaintiff's damages for breach of contract and for fraud are the same, then the damage awards merge. *Id.* Bondsman submitted theories of recovery that were not factually inconsistent, but instead merely included damages that could have overlapped.

The parties disagree as to whether the jury was properly instructed so as to prevent the award of overlapping damages on the breach of contract and fraud claims. This Court need not resolve this issue because, as more fully discussed below, Bondsman failed to prove her fraud claim and is not entitled to recover any of the damages awarded on that claim.

In sum, under the facts of this case, Bondsman was not precluded from submitting both a claim for breach of contract and a claim for fraud so long as she did not seek nor receive double recovery for the same damages. The trial court did not err in submitting both the contract claim and the fraud claim to the jury based on the doctrine of inconsistent theories of recovery. The claims were not inconsistent theories requiring election, and the issue of whether the damages for each claim were kept sufficiently separate and distinct need not be reached.

Having found there was no error in submitting the fraud claim on the grounds of inconsistent theories, the parties' points of error are now addressed.

### III. Should the trial court have granted the motion for judgment notwithstanding the verdict concerning the fraud claim?

Girlfriend argues that the trial court erred in denying her motion for judgment notwithstanding the verdict on Bondsman's fraud claim because Bondsman failed to prove each essential element of her fraud claim.

 A case may not be submitted, and a motion for judgment notwithstanding the verdict should be granted, unless each and every fact essential to liability is predicated upon legal and substantial evidence. *Giddens v. Kansas City S. Ry. Co.,* 29 S.W.3d 813, 818 (Mo. banc 2000). Determining whether evidence is substantial and whether the inferences drawn are reasonable are questions of law. *Bd. of Educ. of City of St. Louis v. Elam,* 70 S.W.3d 448, 452 (Mo.App.2000).

 There are nine essential elements of fraud,[5] and failure to establish any one is fatal to recovery. *Heberer v. Shell Oil Co.,* 744 S.W.2d 441, 443 (Mo. banc 1988). Girlfriend argues that Bondsman failed to prove the essential elements of reasonable reliance, materiality, and damages.

Reliance is an essential element of fraud, and Bondsman could not recover for fraud unless she established that she relied on the truth of the representations claimed to be false. *Empire Gas Corp. v. Small's LP Gas Co.,* 637 S.W.2d 239, 243 (Mo.App.

1982). The reliance must be proven to be reasonable. *Brown v. Bennett,* 136 S.W.3d 552, 555 (Mo.App.2004). Bondsman can recover for fraud only if she was justified, under the circumstances of this case, in relying upon the misrepresentations that were the basis of her fraud claim. *Hanson v. Acceptance Fin. Co., Inc.,* 270 S.W.2d 143, 149 (Mo.App.1954).

Bondsman alleged that she relied on the following statements made by Girlfriend in deciding to post Accused's bonds: Accused's only nickname or alias was "Chance"; Girlfriend had an annual income of more than $100,000; Accused had always appeared for his past court appearances; and Accused was not in violation of his parole by being in Missouri.

Bondsman asserts that her testimony provided substantial evidence that she relied on these representations. The record reveals, however, that Bondsman's testimony was contradictory and did not show that she reasonably relied on Girlfriend's statements in deciding to post the bonds.

 Girlfriend indicated on the bond application that Accused was on probation or parole, but Bondsman did not contact his parole officer before posting the bonds. Bondsman testified that before she posted bond for Accused, the assistant prosecutor spoke with her to ask that she not post Accused's bonds because he "had a rap sheet as long as [she] was tall" and was likely to flee.

Bondsman, who had been a licensed bonding agent since 1989, admitted that she "felt like [Accused] would run." She testified that she had Girlfriend execute a

---

**5.** The nine essential elements are: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity, or ignorance of its truth; (5) the speaker's intent that it should be acted on by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of the falsity of the representation; (7) the hearer's reliance on the representation being true; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximately caused injury. *Heberer v. Shell Oil Co.,* 744 S.W.2d 441, 443 (Mo. banc 1988).

quitclaim deed for the collateral property before posting the $250,000 bond because she wanted to be able to sell the property to satisfy expenses if Accused failed to appear in court. During cross-examination, Bondsman admitted that she did "risk/reward analysis" in deciding to post the bonds—the risk that Accused would run versus the reward of the bond premium. She acknowledged that she decided to post the bonds based on Girlfriend's collateral and good credit report.

Bondsman's contradictory testimony did not provide substantial evidence that she reasonably relied on Girlfriend's representations in deciding to post Accused's bonds.

■ One of Bondsman's fraud instructions differed from her other fraud instructions in that it alleged fraud based on Girlfriend's statement that she would pay all bounty hunter fees and expenses. Bondsman alleged that Girlfriend's promises to pay caused her to incur bounty hunter costs and, in particular, caused her to spend money and time she would not have otherwise spent. Bondsman, however, failed to present substantial evidence that she relied on Girlfriend's oral promises to pay in incurring bounty hunter costs.

Bondsman and Girlfriend orally discussed bounty hunter bills after Accused's disappearance raised questions about the veracity of both defendants. Although Bondsman testified that she relied on Girlfriend's telling her, "I will make sure that all the bills get paid," she also stated that she "would have incurred a lot of expenses regardless because [her] obligation to [the court] is to find [Accused]." Additionally, Girlfriend's oral statements regarding payment of the bounty hunter costs were superfluous insofar as she was already bound under the terms of the contract to pay for the bounty hunter fees and expenses. See Anglin Eng'g Co. v. J.E. Barry Co., Inc.,

912 S.W.2d 633, 639 (Mo.App.1995) (fraud not shown where oral promise to pay was superfluous because there was already contractual obligation to pay).

Inasmuch as Girlfriend was already bound to pay the costs under the contract, and Bondsman would have incurred the costs under her obligations to the court, Bondsman failed to establish she materially relied on Girlfriend's oral promises to pay in incurring bounty hunter costs.

Because Bondsman did not establish the essential element of reliance needed to support her fraud claims, the trial court erred in overruling Girlfriend's motion for judgment notwithstanding the verdict on the fraud claims. The portion of the judgment awarding damages for fraud is reversed.

Given this Court's conclusion that Bondsman failed to make a submissible case for fraud, Girlfriend's points alleging that the trial court erred in submitting two of the fraud instructions to the jury are also meritorious, but do not require further discussion.

### IV. Did the trial court err in awarding attorney fees?

Both parties argue the trial court erred in awarding attorney fees. The parties agree that attorney fees were payable under paragraph 2 of the bond contract, but disagree as to how the fees should have been calculated.

In relevant part, paragraph 2 of the bond contract states:

> [Girlfriend agrees] [t]o indemnify [Bondsman] against all ... attorney fees ... which [Bondsman] may sustain or incur in making such bond, prosecuting or defending any action brought in connection therewith, and enforcing any of the agreements herein contained, and specifically in enforcing any collateral or

indemnifying agreement as well as any expense in locating [Accused] and producing him in Court. If upon failure of the Parties to comply with any of the terms or conditions of this agreement and should it be necessary for [Bondsman] to refer this agreement to an Attorney for collection, the Parties agree to pay an attorney fee in the amount of 33 1/2 % whether or not such action proceeds to judgement.

The trial court found that Bondsman was "entitled under the terms of the bailbond/indemnity contract to recover her expenses plus attorney fees in the amount of 33.5 [percent] of the total judgment received on the contract claim." It ordered Girlfriend to pay $48,380.70 as attorney fees on the $144,420 contract damages award. The trial court expressly found that Bondsman was "not entitled to any recovery of fees calculated at an hourly rate."

Girlfriend asserts that the trial court erred in awarding attorney fees because it did not credit her for the $58,500 [6] that she paid under the contract before Bondsman hired an attorney. She argues the contract is ambiguous as to how attorney fees are to be calculated where, as here, there has been a "set-off" for monies paid under the contract separate from the legal action. She asserts that the trial court correctly used the 33.5 percent calculation, but should have applied it only to the monies that Bondsman collected with the assistance of an attorney.

Bondsman contends that the contract is not ambiguous regarding attorney fees when the purpose of the contract as a whole—to ensure that she is made whole in the event of breach—is considered. She asserts that the trial court erred in using the 33.5 percent calculation because her attorney fees were payable under the first sentence of paragraph 2, which permitted recovery of "all" attorney fees for prosecuting and defending the bond contract.

The determination of attorney fees is within the sound discretion of the trial court and should not be reversed unless the award is arbitrarily arrived at or is so unreasonable as to indicate indifference and lack of proper judicial consideration. *State ex rel. Laszewski v. R.L. Persons Const., Inc.*, 136 S.W.3d 863, 873 (Mo.App.2004). Where a party's claim to attorney fees is based upon a contract the court must adhere to the terms of the contract and may not go beyond it. *Harris v. Union Elec. Co.*, 766 S.W.2d 80, 89 (Mo. banc 1989). The purpose of contract construction is to ascertain the intent of the parties and to give effect to that intent, which is determined based on the contract alone unless the contract is ambiguous. *J.E. Hathman, Inc. v. Sigma Alpha Epsilon Club*, 491 S.W.2d 261, 264 (Mo. banc 1973).

A contract is ambiguous if its terms are susceptible of more than one meaning so that reasonable persons may fairly and honestly differ in their construction of the terms. *Eisenberg v. Redd*, 38 S.W.3d 409, 411 (Mo. banc 2001). Where a contract is fairly open to two or more interpretations, it will be construed against the party who prepared the contract. *Graue v. Mo. Prop. Ins. Placement Facility*, 847 S.W.2d 779, 785 (Mo. banc 1993).

The attorney fee language in paragraph 2 is ambiguous. This case could be considered under the "any action"

---

**6.** After Accused absconded, Bondsman demanded $58,500 from Girlfriend, and Girlfriend wired Bondsman that money. Girlfriend alleges that Bondsman did not show that this money was collected because of failure to comply with the contract terms or necessitated the assistance of an attorney. This sum is discussed in greater detail in the disposition of Bondsman's cross-appeal issues.

language of the first sentence or it could be treated as a "collection" action under the second sentence insofar as Bondsman is using this case to collect the monies owed under the contract. Because paragraph 2 is ambiguous as to how attorney fees should be calculated, the trial court did not abuse its discretion in construing paragraph 2 against Bondsman, who drafted the contract, and awarding her attorney fees based on 33.5 percent of her contract damages. Before the trial court calculated the attorney fees, however, it should have credited Girlfriend for the $58,500 that she paid Bondsman before Bondsman hired an attorney. That sum was not collected with the assistance of an attorney and should not have been considered in calculating the attorney fees owed.

Attorney fees should have been calculated as 33.5 percent of the $85,920 contract damages that Bondsman collected with the assistance of an attorney,[7] resulting in an award of $28,783.20 for attorney fees. This Court, pursuant to Rule 84.14, enters the judgment the trial court ought to have given and modifies the judgment to order Girlfriend to pay Bondsman $28,783.20 for attorney fees.

This Court finds no error as to the other issues raised by the parties and gives them only cursory discussion.

### V. Did the trial court err in sustaining the closing argument objections?

Girlfriend alleges that the trial court erred in repeatedly sustaining Bondsman's objections to Girlfriend's closing arguments regarding the $25,000 balance due on the bond premium. She argues that the trial court erred in informing the jury that she owed the balance as a matter of law, and she asserts that whether she owed the balance was a disputed fact for the jury to determine.

▮▮▮ Generally, the trial court's rulings on closing arguments are reviewed for abuse of discretion. *Nelson v. Waxman,* 9 S.W.3d 601, 606 (Mo. banc 2000). When defendants are jointly and severally liable on a contract, each is individually liable for the entire amount of the plaintiff's damages. *Cohn v. Dwyer,* 959 S.W.2d 839, 845–46 (Mo.App.1997).

At the commencement of the trial, the jury was read established facts, without objection, indicating that Girlfriend and Accused were liable on the bail bond contract. The only thing left for the jury to determine on the contract claim was the amount of contract damages owed by both defendants together, not individually. Considering that each defendant was liable on the contract, and thereby responsible for the entire amount of Bondsman's damages under the contract, the trial court did not err in sustaining Bondsman's objections.

▮▮▮ Girlfriend further argues that the trial court erred during closing by giving the jury a verbal instruction that it was the court's job to determine damages. This argument is without merit because the judge's comments were merely a ruling in response to an objection, and the requirement that jury instructions be in writing has no application to the necessary and proper rulings the court makes on objections to arguments. *O'Donnell v. St. Louis Pub. Serv. Co.,* 246 S.W.2d 539, 545 (Mo.App.1952).

### VI. Should the withdrawal instruction have been submitted?

▮▮▮ Girlfriend alleges that the trial court erred in refusing to submit her withdrawal instruction in that it would have "eliminated the false issue of bounty hunter fees not actually paid or incurred" by

---

**7.** [$144,420 total contract damages]—[$58,- 500 paid prior to action] = $85,920.

Bondsman. Whether to give a withdrawal instruction is a matter within the discretion of the trial court. *Anglim v. Mo. Pac. R.R. Co.,* 832 S.W.2d 298, 308 (Mo. banc 1992). A withdrawal instruction may be given when evidence on an issue has been received, but there is inadequate proof given for final submission of the issue to the jury. *Arnold v. Ingersoll–Rand Co.,* 908 S.W.2d 757, 764 (Mo.App.1995).

Girlfriend argues that while Bondsman showed evidence of *expenses* related to bounty hunters, she failed to show she paid any bounty hunter fees. Although Bondsman admitted that no bounty hunters were paid a fee for capturing Accused, evidence was presented regarding costs associated with the bounty hunters listed in Girlfriend's withdrawal instruction. The record shows that the terms "fees" and "expenses" were intermingled at trial, such that an instruction telling the jury to not consider bounty hunter fees could have misled them also not to consider bounty hunter expenses. There was sufficient evidence presented from which the jury could decide that Bondsman suffered damages under the bond contract due to hiring the bounty hunters listed in Girlfriend's withdrawal instruction. Girlfriend has failed to show that the trial court abused its discretion in refusing to instruct the jury not to consider the evidence related to these bounty hunters. This Court finds no error.

### VII. Did the trial court err in awarding a "set-off"?

Bondsman argues in her cross-appeal that the trial court erred in giving Girlfriend a set-off of $58,500 against the contract damages award for monies Girlfriend had previously paid Bondsman under the contract. In reviewing the trial court's decision, this Court is primarily concerned with the correctness of the trial court's result, not the route taken by the

trial court to reach that result. *Business Men's Assurance Co. of Am. v. Graham,* 984 S.W.2d 501, 506 (Mo. banc 1999). The trial court's judgment as to the $58,500 will be affirmed under any reasonable theory supported by the evidence, even if the reasons advanced by the trial court are wrong or insufficient. *Id.*

The goal of awarding damages is to compensate a party for a legally recognized loss, but although a party should be fully compensated for its loss, it should not recover a windfall. *Ameristar Jet Charter, Inc. v. Dodson Int'l Parts, Inc.,* 155 S.W.3d 50, 54 (Mo. banc 2005). As such, the trial court did not err in crediting Girlfriend for the $58,500 that Bondsman admitted she had already paid under the contract. Finding that the trial court did not err on these grounds, this Court need not address the parties' arguments challenging the method in which this issue was presented in the second trial.

### VIII. Should the cost of the transcript have been awarded?

Bondsman argues that the trial court erred in failing to award her the cost of the transcript for the first appeal. Awarding costs and expenses is within the sound discretion of the trial court and should not be reversed absent a showing that the trial court abused its discretion. *See Clancy v. Herman C.G. Luyties Realty Co.,* 321 Mo. 282, 10 S.W.2d 914, 915 (Mo.1928). Where a contract provides for the payment of expenses incurred in the enforcement of a contract provision, the trial court errs if it fails to award expenses to the prevailing party. *Luck "E" Strike Corp. v. First State Bank of Purdy,* 75 S.W.3d 828, 835 (Mo.App.2002). The trial court did not fail to award expenses to Bondsman as required under the contract, and Bondsman has failed to show that the cost of the transcript was not included in the more than $18,000 costs and expenses

the trial court awarded. The trial court did not err in failing to specifically award the cost of the transcript.

## IX. Conclusion

The judgment as to the contract claim is affirmed as modified. The judgment as to the fraud claim is reversed in total, as Bondsman failed to make a submissible case for fraud. In all other respects, the trial court's judgment is affirmed.

All concur.