**TRIDENT GROUP, LLC and Fazimo, Inc., Plaintiffs/Respondents,**

v.

**MISSISSIPPI VALLEY ROOFING, INC., Defendant/Appellant.**

No. ED 90268.

Missouri Court of Appeals,
Eastern District,
Division Four.

Jan. 30, 2009.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 10, 2009.

The Hullverson Law Firm, James E. Hullverson, Jr., St. Louis, MO, for Appellant.

Federer and Federer, Ian Christopher Simmons, St. Charles, MO, for Respondent.

Before BOOKER T. SHAW, P.J., and KATHIANNE KNAUP CRANE, J., and MARY K. HOFF, J.

## OPINION

PER CURIAM.

Mississippi Valley Roofing, Inc. (Defendant) appeals from the judgment resulting from a suit for roof damages to two commercial buildings, Brookwood Shopping Center (Brookwood) and Poor Richards Building (Poor Richards), owned by Fazimo, Inc. (Fazimo) and managed by Trident Group LLC, (Trident) (collectively Plaintiffs). The judgment awarded Fazimo a total of $89,500 in damages, plus costs, and awarded Trident $0 in damages.

On appeal, Defendant argues the trial court erred in: (1) overruling its objection to the admission of a roofing report provided by Steven Gray (Gray), a roofing consultant, as hearsay; (2) overruling its objections to Instructions 13 and 16, modeled after MAI 26.02; (3) overruling its objections to Instructions 29 and 34, modeled after MAI 17.02; (4) sustaining Plaintiffs' objections that Defendant's cross-examination of several witnesses was "beyond the scope of direct examination"; (5) overruling its objection that Mark Vigna (Vigna), Poor Richards tenant, was a "surprise witness"; (6) overruling its objection that Plaintiffs "misstated the law" during closing argument; (7) overruling its objection to Plaintiffs' submitting multiple "theories" of recovery, in tort and contract, which resulted in double recovery; (8) denying its objection to the verdict, as inconsistent and contradictory, and demand for mistrial; and (9) denying its motion to dismiss Trident for lack of standing. We affirm in part, reverse in part, and remand with directions.

### Factual and Procedural Background

The record, viewed in the light most favorable to the jury verdict, reveals Plaintiffs and Defendants had a long-standing work relationship since the mid–1990s. On or about June 12, 2002, Plaintiffs entered into a roofing contract with Defendant whereby Defendant agreed to install a GAF Ruberoid Roofing System on Brookwood. The contract price was $39,200. The contract was signed by Defendant but not by Plaintiffs. Defendant began work on Brookwood sometime around August of 2002 and was paid in full for the work performed. On or about June 3, 2003, Plaintiffs entered into a roofing contract with Defendant whereby Defendant agreed to install a GAF Ruberoid Roofing System on Poor Richards. The contract price was $24,980. The contract was signed by both Defendant and Plaintiffs. Plaintiffs paid in full for the work performed on Poor Richards.

Shortly following the installation of the roofing systems, Plaintiffs began complaining of leaks. Despite numerous calls to Defendant, who allegedly attempted to repair the leaks, the problems with the roof continued.

Eventually, Plaintiffs filed an eight-count petition seeking damages for breach of contract and negligence against Defendant. Defendant moved to dismiss Trident, as property manager, for lack of standing to sue alleging that only the owner of real property had standing to sue for damages. Defendant also moved to dismiss the action in that the breach of contract and negligence claims were improperly united. The trial court denied Defendant's motions.

Defendant then filed motions to strike and for more definite pleadings, particularly allegations concerning building code violations and special damages and reiterated the objection that Trident lacked standing to sue as well as that the breach of contract and negligence claims were improperly united. The trial court granted Defendant's motion only as to the building code violations.

Plaintiffs then filed their First Amended Petition. In Count I, Plaintiffs alleged breach of contract and warranties with respect to Brookwood in the amount of $100,833. In Count II, Plaintiffs alleged professional negligence with respect to Brookwood in the amount of $25,000. In Count III, Plaintiffs alleged defective performance with respect to Brookwood in the amount of $25,000. In Count IV, Plaintiffs alleged breach of contract and warranties with respect to Poor Richards in the amount of $53,077. In Count V, Plaintiffs alleged professional negligence with respect to Poor Richards in the amount of $25,000. In Count VI, Plaintiffs alleged defective performance with respect to Poor Richards in the amount of $25,000. In Count VII, Plaintiffs alleged fraudulent misrepresentation with respect to both buildings in the amount of $25,000. In Count VIII, Plaintiffs alleged negligent misrepresentation with respect to both buildings in the amount of $25,000.

Defendant renewed its motions and objections to Plaintiffs' Amended Petition, including that Trident lacked standing to sue. Defendant also objected to allegations of special damages by class and to fraudulent misrepresentation and ordinance violations pleadings, and argued special damages had to be limited to those pled. The trial court denied Defendant's motion, but ordered Plaintiffs to specify damages in discovery.

In its Answer to Plaintiffs' Amended Petition, Defendant denied it entered into a contract on June 12, 2002, to repair the Brookwood roof, but admitted the existence of the June 3, 2003, contract to repair the Poor Richards roof. Under its "affirmative defenses," Defendant repeated objections related to Trident's lack of standing.

Plaintiffs filed a motion to strike Defendant's affirmative defenses arguing that they were not true defenses and/or were improperly pled. The trial court granted Plaintiffs' motion.

Thereafter, Defendant filed written motions for directed verdict at the close of Plaintiffs' case and again at the close of Defendant's case arguing that Plaintiffs failed to establish the existence of a June 12, 2002, contract, relating to Brookwood, or that they sustained any actionable damage resulting from the performance of any contract between themselves and Defendant. The trial court denied Defendant's motions.

Following the close of all evidence and argument by both parties, the jury found in favor of Fazimo for breach of contract on the Brookwood and Poor Richards properties (Verdicts C and D, $39,200 and $24,980, respectively) and for professional negligence (Verdicts G and H, $12,660 and $12,660, respectively) and assessed damages in the amount of $89,500. The jury found in favor of Trident for breach of contract (Verdicts A and B) and assessed percentage of fault at 50% for Trident on the professional negligence claims (Verdicts E and F) but assessed $0 damages. The trial court entered judgment on the verdicts. Defendant filed timely post-trial motions, which the trial court denied. This appeal follows.

### Inconsistent Theories of Recovery

Defendant asserts numerous claims on appeal. However, we initially address Defendant's point regarding the issue of "election of inconsistent theories of recovery" as a threshold matter.

■ In Point VII, Defendant argues the trial court erred in overruling its objection to Plaintiffs submitting multiple "theories" of recovery, in tort and contract. Specifically, Defendant contends the trial court erred in allowing Plaintiffs to submit to the

jury multiple "theories" with separate damages lines thereby inviting "impermissible and inconsistent double recoveries." We agree.

■ Under the election of inconsistent theories of recovery doctrine, a party must elect between theories of recovery that are inconsistent, even though pled together as permitted by Rule 55.10, before submitting the case to the trier of fact.[1] *Trimble v. Pracna*, 167 S.W.3d 706, 710 (Mo. banc 2005); *Whittom v. Alexander–Richardson Partnership*, 851 S.W.2d 504, 506–07 (Mo. banc 1993). "If two counts are so inconsistent that proof of one necessarily negates, repudiates, and disproves the other, it is error to submit them together." *Id.* (*citing Whittom*, 851 S.W.2d at 507). Determination of when two theories are inconsistent depends heavily upon the facts of each case. *Id.* "Theories are inconsistent and require an election only if, in all circumstances, one theory factually disproves the other." *Id.*

■ Under the facts of this case, Plaintiffs could not sue Defendant to recover separately for damages resulting from breach of the contract and recover additional damages resulting from Defendant's negligence in installing the roofing system. *See Newell Rubbermaid, Inc. v. Efficient Solutions, Inc.*, 252 S.W.3d 164, 175 (Mo. App. E.D.2007) (not error to submit negligence and breach of the parties contract as *alternative* verdict directors). A plaintiff is only entitled to be made whole once, and the election of theories doctrine is intended to prevent a plaintiff from recovering more than one full recovery for the same harm. *Trimble*, 167 S.W.3d at 711.

Here, under Verdicts C and D, the jury found for Plaintiffs concluding that Defendant breached the contract and that Plaintiffs were entitled to damages in the amounts of $39,200 and $24,980, respectively, from the failure to complete the work in a good and workmanlike manner, according the GAF installation requirements, and BOCA Building Codes. Having so found, the jury could not also find under Verdicts G and H that Plaintiffs were entitled to additional damages in the amounts of $12,660 and $12,660, respectively, for negligence. Based on the facts of this case, Plaintiffs were receiving double recovery for the same damages in submitting both claims for breach of contract and claims for professional negligence, without making an election prior to submitting the matter to the jury or electing after the jury verdicts. We reverse as to Verdict G and Verdict H.

Having found there was error in awarding damages for both the breach of contract and professional negligence due to double recovery, we now address Defendant's remaining points of error.

### Admission of Roofing Report

■ In Point I, Defendant argues the trial court erred in overruling its objection that Gray's report was hearsay. Specifically, Defendant argues that admission of a prior consistent statement is only admissible to rebut impeachment based on fabri-

---

1. The doctrine of election of inconsistent theories of recovery as compared to the doctrine of election of remedies has caused confusion in this case and others. *Trimble*, 167 S.W.3d at 710 (*citing Whittom*, 851 S.W.2d at 506–07). The election of remedies doctrine is a doctrine of estoppel, providing that where a party has the right to pursue one of two inconsistent remedies and makes an election, institutes suit, and prosecutes it to final judgment, that party cannot thereafter pursue another and inconsistent remedy. *Id.* at 711 (*citing Whittom*, 851 S.W.2d at 506). Distinct from the election of remedies doctrine is the election of inconsistent theories of recovery doctrine. *Id.* (*citing Whittom*, 851 S.W.2d at 506–7).

cation or inconsistency, which was not the case here. We disagree.

■ A prior consistent statement is not hearsay and is admissible if the statement is "offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive." *Anuhco, Inc. v. Westinghouse Credit Corp.*, 883 S.W.2d 910, 927 (Mo.App. W.D. 1994) (citing Rule 801(d)(1)(B), Federal Rules of Evidence).

During its opening statement, Defendant charged Gray with improper influence and attacked his credibility and motive as follows:

> For their expert [Gray] they paid him thousands and thousands of dollars to prepare a report, but they don't give them the business to repair their buildings. He's a very interesting fellow because we know that he doesn't know basic physics and boils[sic] law. He didn't know it. . . . He had a little trouble with fundamental science.

Later, Gray's report was discussed through cross-examination of Ted Federer (Federer), Trident's Vice President of Sales and Management, as Defendant attempted to show Trident hired Gray to "begin fraudulent litigation" or to thwart Defendant's threatened mechanics lien on another job in which Trident was delinquent.

■ In addition, Gray's report was cumulative of matters otherwise proved in Plaintiffs' case. A complaining party is not entitled to assert prejudice if the challenged evidence is cumulative to other related admitted evidence. *Rinehart v. Shelter General Ins. Co.*, 261 S.W.3d 583, 590 (Mo.App. W.D.2008); *Platt v. Williams*, 672 S.W.2d 388, 390 (Mo.App. E.D.1984). Here, prior to offering the report, Gray testified at length concerning the contents of the report, including the

defects in workmanship as well as BOCA Code and GAF specifications. Finally, contrary to Defendant's argument, it was unnecessary to decline cross-examination of Gray to "cement" the error. *Jackson By and Through Jackson v. Jackson*, 875 S.W.2d 590, 592 (Mo.App. E.D.1994) (when a party objects to the admission of evidence and then cross-examines a witness about the matter, the objecting party has not waived the error in admitting the evidence). Point I is denied.

### Instructions 13, 16, 29 and 34

In Points II and III, Defendant argues the trial court erred in overruling its objections to Instructions 13 and 16, modeled after MAI 26.02, as well as overruling its objections to Instructions 29 and 34, modeled after MAI 17.02. Defendant contends these instructions violated Rule 70.02. We disagree.

Rule 70.02(b) requires that modifications to approved jury instructions be "simple, brief, impartial, free from argument, and shall not submit to the jury or require findings of detailed evidentiary facts." Under Rule 70.02(c), we will reverse a trial court's decision to submit a jury instruction only if the offending instruction misdirected, misled, or confused the jury, resulting in prejudicial error. *Rinehart*, 261 S.W.3d at 593. A review of the modified instructions reveals that they complied with Rule 70.02(b): they were simple, brief, impartial, free from argument, and did not submit to the jury or require findings of detailed evidentiary facts.

■ Contrary to Defendant's assertion, mention of BOCA codes in the instructions did not require the jury to find detailed evidentiary facts. *See City of Sullivan v. Truckstop Restaurants, Inc.*, 142 S.W.3d 181, 197–98 fn. 6 (Mo.App. E.D.2004) (no finding that reference to the "commercial service rate classification ordinance" re-

quired the jury to make findings of detailed evidentiary facts). Here, the jury had been informed of the subject matter of the applicable BOCA codes during Gray's testimony, which concerned securing the roof covering, manufacturer's installation requirements, proper fastening procedures, and conditions necessary for using existing roof covering as base for new roof covering. Therefore, the description of the codes was not necessary and no prejudice resulted from their submission. *Nagy v. Missouri Highway and Transp. Com'n,* 829 S.W.2d 648, 653 (Mo.App. E.D.1992) (appellant bears the burden of demonstrating that the instructions were prejudicial in order for it to constitute reversible error).

■ In addition, *Newell Rubbermaid, Inc.* supports Plaintiffs' argument that they were allowed to submit their case against Defendant to the jury on two theories: breach of contract and negligence, with a verdict director for each. *Newell Rubbermaid, Inc.,* 252 S.W.3d at 178. The party claiming instructional error has the task of showing that the instruction misdirected, misled, or confused the jury. *Jone v. Coleman Corp.,* 183 S.W.3d 600, 605 (Mo.App. E.D.2005). This Defendant has not carried this burden. Points II and III are denied.

*Cross–Examination of Witnesses*

In Point IV, Defendant argues the trial court erred in sustaining Plaintiffs' objections that Defendant's cross-examination of several witnesses was "beyond the scope of direct examination." Specifically, Defendant argues the trial court abused its discretion of limiting the scope of cross-examination with respect to Charles Fazio (Fazio), Michael Schumake (Schumake), Federer, and Brent Darabcsek (Darabcsek).

■ The extent and scope of cross-examination in a civil action is within the sound discretion of the trial judge and will not be disturbed unless an abuse of discretion is clearly shown. *Newell Rubbermaid, Inc.,* 252 S.W.3d at 170. A review of the record shows the trial court did not exceed its wide latitude with respect to cross-examination of the four witnesses mentioned by Defendant.

■ First, the trial court did not exceed its discretion in limiting Defendant's cross-examination of Fazio and excluding inquiry related to trial subpoena. Defendant claims that its cross-examination of Fazio, and the fruit of the subpoena duces tecum it served upon him on the eve of trial, would have shown a lack of diminution in value to the real estate.

Even assuming the evidence sought by the subpoena would have shown a lack of diminution in value to the real estate, Defendant failed to present the requisite evidence of economic waste in order to make diminution in value the proper measure of damages. Unless Defendant presented evidence that the cost of repair or replacement would constitute economic waste, the proper measure of damages could not have been the diminished value of the property due to the defective work. *Dubinsky v. United States Elevator Corp.,* 22 S.W.3d 747, 751–52 (Mo.App. E.D.2000) (proper measure of damages in a breach of construction contract is cost of repair); *see also McLane v. Wal–Mart Stores, Inc.,* 10 S.W.3d 602, 605 (Mo.App. E.D.2000).

■ Second, the trial court did not abuse its discretion in limiting Defendant's cross-examination of Schumake. The record reveals that Defendant's only unanswered questions to Schumake, of Frederic Roofing, due to a sustained "exceeding the scope" objections, were whether Schumake had heard the testimony of another witness regarding roofing repairs to Plain-

tiffs' property and whether Schumake was aware of a bid rejected by Plaintiffs concerning a new roof estimate. Defendant has claimed no prejudice resulting from these rulings and Defendant made no offer of proof at trial as to what testimony it expected to elicit from Schumake.

Third, the trial court did not exceed its discretion in limiting Defendant's cross-examination of Federer. Defendant claims it was prevented from impeaching Federer regarding "Gray's scheme, the trespass and demand letters" when Federer was recalled in Plaintiffs' case. The record shows Defendant voiced its theory of the "scheme" to the jury during responses to Plaintiffs' objections during such questioning. The remaining trial court rulings on Plaintiffs' objections during Defendant's cross-examination of Federer concerned matters not part of or exceeded the scope of the instant litigation.

██ Finally, the trial court did not exceed its discretion in limiting Defendant's cross-examination of Drabascek. Defendant claims the trial court erred by denying cross-examination of Drabascek, a representative of Defendant, called as an adverse witness in Plaintiffs' case. Again, Defendant claims no prejudice from this purported error and a review of the record reveals no prejudice in denying cross-examination of this witness, especially considering Defendant re-called Drabascek to the stand in its case with the opportunity to ask whatever questions it desired on direct.

The trial court's rulings were proper as to the scope of cross-examination of all four witnesses, and Defendant suffered no

prejudice. There was no abuse of discretion. Point IV is denied.

### Surprise Witness

██ In Point V, Defendant argues the trial court erred in overruling its objection that Vigna, Poor Richards tenant, was a "surprise witness." We disagree.

██ Missouri law is clear on previously undisclosed witnesses:

The trial court is vested with broad discretion to admit or reject testimony of a previously undisclosed witness whose identity may have been requested by interrogatory, and this court reviews only for abuse of that discretion.... 'The primary purpose of interrogatories is to aid the litigants to find out *prior to the trial* what the facts are, so that controversial issues can be ascertained and the preparation for trial and the trial limited to them all to the end of obtaining substantial justice between the party's litigant....' [Emphasis in original.]

*Johnson v. National Super Markets, Inc.,* 710 S.W.2d 455, 456 (Mo.App. E.D.1986).

Vigna is the president and operator of Poor Richards restaurant, which has been a long-time tenant in Poor Richards, one of the buildings upon which Defendant was contracted to work. At trial, Defendant objected to Plaintiffs' calling and offering testimony of Vigna. However, from the record, the trial court did not abuse its discretion in overruling Defendant's objection as to surprise and admitting the testimony of Vigna, whose identity may have been requested by interrogatory and who had not been identified by Plaintiffs in their answer to the interrogatory.[2]

2. Under Rule 61.01(b), "[i]f a party fails to answer interrogatories or file objections thereto within the time provided by law, or if objections are filed thereto which are thereafter overruled and the interrogatories are not timely answered, the court may, upon motion and reasonable notice to other parties, make such orders in regard to the failure as are just...."

In this case, Defendant neither filed a motion to compel nor sought any sanctions; it proceeded to trial with the interrogatory remaining unanswered. *See Cain v. Buehner and Buehner*, 839 S.W.2d 695, 698 (Mo.App. S.D.1992) (commenting that "[i]f Plaintiff could have gone to trial without the answers, it would be inferable the interrogatories were frivolous and the answers inessential for trial preparation"). The trial court did not abuse its discretion in allowing the testimony of Vigna. Point V is denied.

### Closing Argument

■ In Point VI, Defendant argues the trial court erred in overruling its objection that Plaintiffs "misstated the law" during closing argument. We disagree.

During closing argument, Plaintiffs stated as follows with respect to Defendant's installation of the roof:

They didn't follow the specs there. Their method of adhering that to the old roof is not in any way found in a GAF manual. They can't [point] you to anything in the GAF manual because it isn't there. It's their way of doing it. It's the [Defendant's] way ... I guess. It's not the GAF specs way. And that's the way they've got to do it. That's the way they're held to do it under Missouri law.

Here, the express and implied terms of the contracts between the parties required that "a GAF Ruberoid Roofing System" would be provided and that GAF materials be applied in a manner sufficient to be warranted by GAF. Plaintiffs' breach of contract and warranties claims were based upon the allegation that the materials supplied by Defendant failed to conform to the requirements of the contracts, and that the work was not performed according to the contracts. This is not a misstatement of Missouri law. Point VI is denied.

### Inconsistent Verdict

■ In Point VIII, Defendant argues the trial court erred in denying its objection to the verdict, as inconsistent and contradictory, and demand for mistrial. Defendant contends that, as rendered, the verdicts were incapable of being acted upon by law so as to determine the rights of the parties. We disagree.

In *Morse v. Johnson*, 594 S.W.2d 610 (Mo. banc 1980), the court recited the general rules for construing the verdict and judgment:

(1) That the verdict must be clear and unambiguous so that a judgment may be written upon it without resorting to inference or to construction; (2) that if from a consideration of the whole record the meaning of the jury can be made clear and the judgment is based upon what the jury actually found, it will be upheld; (3) that verdicts should be construed to give them effect if it can reasonably be done; (4) that the jury's intent is to be arrived at by regarding the verdict liberally and (5) although defective in form, if a verdict substantially finds the question in issue in such a way as will enable the court intelligently to pronounce judgment thereon for one or the other party, it is sufficiently certain.

*Morse*, 594 S.W.2d at 616. Application of the rules stated above leads to the conclusion that the verdict was sufficient for purposes of entering judgment thereupon. There is no doubt from the jury's verdicts that Plaintiffs were the prevailing party and Defendant was the losing party. Even assuming that the verdicts were defective in form, they are sufficiently certain in that they substantially found the questions in issue in such a way as would enable the trial court intelligently to pronounce judgment thereon for one or the other party. *Id.*

 Moreover, upon Defendant's motion, the trial court could have ordered the jury to return for further deliberation. *Douglass v. Safire*, 712 S.W.2d 373, 374 (Mo. banc 1986). Any error could have been corrected before the jury was discharged, while correction was still possible. *Id.* By arguing to discharge the jury, Defendant waived any possible inconsistencies in the jury's verdicts. *Id.* Point VIII is denied.

### Trident's Standing

 In Point IX, Defendant argues the trial court erred in denying Defendant's motion to dismiss in that Trident lacked standing to enforce the contract and pursue claims for damages. Defendant contends Trident was never a party to the contract, but instead the contract was solely between Fazimo and Defendant. We disagree.

A party to a contract or a third-party beneficiary has standing to enforce an agreement. *Goldring v. Franklin Equity Leasing Co.*, 195 S.W.3d 453, 456 (Mo.App. E.D.2006). There is no requirement under Missouri law that a party have interest in the real property being worked on under contract to have standing to sue for damages from breach of that contract or negligence in connection with performance of the contract.

Here, both the property manager and the property owner were joined as Plaintiffs. Throughout trial, Plaintiffs discussed and presented evidence as to cost of repair damages as well as other damages resulting from lost rental and management fees. Whether or not Trident proved any damages was an issue for the jury to decide and the jury found none. The trial court correctly ruled in favor of Plaintiffs on Defendant's motion to dismiss. Point IX is denied.

### Conclusion

The judgment of the trial court is reversed as to Verdict G and Verdict H. We affirm the remainder of the judgment. The case is remanded for the trial court to enter a judgment consistent with this opinion.