

# In the Missouri Court of Appeals
# Eastern District

### DIVISION THREE

| | | |
|---|---|---|
| BILLY R. RICHEY, | ) | No. ED101584 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court |
| | ) | of the City of St. Louis |
| vs. | ) | 1122-CC10729 |
| | ) | |
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, | ) | Honorable Michael F. Stelzer |
| | ) | |
| | ) | |
| Respondent. | ) | Filed:  February 2, 2016 |

Billy R. Richey ("Appellant") appeals the judgment entered upon a jury verdict in favor of State Farm Mutual Automobile Insurance Company ("Respondent") on Appellant's claim for uninsured motorist benefits under a policy issued by Respondent.  We reverse and remand.

## I.     BACKGROUND

On the evening of April 5, 2008, Appellant was riding his motorcycle on a rural highway in Dade County, Missouri.  Appellant suffered extensive injuries as a result of an accident and sought uninsured motorist coverage under his policy issued by Respondent.  Respondent denied Appellant coverage, and Appellant initiated the instant lawsuit.  A jury trial on whether Appellant was entitled to uninsured motorist benefits under the policy was held from February 24-27, 2014.

**A.    Appellant's evidence and testimony**

Appellant testified that on the day of the accident, he was returning home on his motorcycle after visiting a relative. As Appellant approached a bend in the highway, an unknown driver (referred to by the parties as the "phantom vehicle") travelling in the opposite direction swerved into Appellant's lane. Appellant stated he could have either driven off the road or hit the oncoming car head-on. Appellant swerved or steered his motorcycle to the right to avoid the other vehicle, and upon leaving the road, Appellant crashed into a ditch, sustaining serious injuries. The driver of the other vehicle left the scene. The area of the accident was about forty to fifty yards past the start of the curve. In addition, Appellant's motorcycle left tire marks where the motorcycle exited the road close to where the curve started.

Jeremy Jones, a deputy with the Greene County Sheriff's Department, found Appellant lying unconscious partially in the roadway. Deputy Jones called 911, secured Appellant's neck to ensure he did not injure himself further, and waited for paramedics to arrive. Appellant was transported from the scene by paramedics, and was then airlifted by helicopter to a hospital in Springfield, Missouri. He remained there in a coma for approximately three weeks.

Appellant was charged with the class A misdemeanor of careless and imprudent driving as a result of the accident. The charge specifically stated that Appellant drove off the roadway and struck a ditch, thereby endangering the property of another or the life and limb of any person. He was also charged with having an improper license. Appellant pleaded guilty to the charge of careless and imprudent driving but not guilty to the charge of driving with an improper license. Appellant claimed he pleaded guilty to the charge of careless and imprudent driving because it would be too expensive to hire an attorney to contest the charge, although he admitted he was not afraid to defend himself on the charge having an of improper license.

Appellant stated he told Respondent he had been run off the road, including during communications with his local agent, Jerry Poston, and Kim Sandbothe, an agent who worked with Poston. Appellant also testified he called Respondent's main office twice and stated he reported to Respondent that he had been run off the road during both conversations.

## B.     Respondent's evidence

Respondent presented an alternative theory of the case, positing there was no other driver and Appellant ran off the highway due to his own inattention. Respondent first relied on testimony from Corporal Todd Hadlock. At the time of the trial, Corporal Hadlock had been with the Missouri Highway Patrol for nineteen years, had taken classes involving the investigation of accidents, and had investigated approximately 1,500 accidents. Corporal Hadlock was noticed up as an expert witness in accident reconstruction, but did not perform an accident reconstruction in this instance.

Corporal Hadlock testified as to his observations of the scene and as to his opinion regarding the circumstances of the accident. He testified as follows. There was a skid mark 177 feet in length at the scene of the accident in a ditch and a divot that had been taken out by the motorcycle. From the skid mark, it appeared Appellant had entered the curve and gradually left the road. Had Appellant swerved, Corporal Hadlock stated he would have expected to see a "yaw" mark or brake mark on the road, but there was no evidence of this at the scene. From the evidence, it appeared the motorcycle had left the roadway in a straight line. Corporal Hadlock stated he found no evidence that another vehicle had forced Appellant off the road. It was Corporal Hadlock's opinion Appellant was inattentive at the time of the crash. Corporal Hadlock gave Appellant a ticket for careless and imprudent driving as a result of the accident.

3

Respondent also presented evidence from Respondent's agents who handled the claim. Poston, Appellant's insurance agent, testified that Appellant never said anything about being run off the road. Had something like that been said, Poston testified he would have made a note regarding how the accident had taken place, and information about a car running Appellant off the road would have been noted in Respondent's master record. Sandbothe, an agent who worked with Poston, also stated that Appellant had never indicated there was another vehicle involved in the accident. Finally, Cullen Jordan, a claims Team Manager for Respondent at its main office, testified that the claim was reported to Respondent as a single-vehicle accident leaving the roadway and striking a ditch. The claim file reflects numerous contacts with Appellant and his family members and no one mentioned anything about a phantom vehicle until November 10, 2010, over two and one-half years after the accident. According to Jordan, the first indication that a phantom vehicle may have been involved was when a letter was received from Appellant's counsel on November 10, 2010.

## C. The trial

The sequence of argument and testimony presented at trial is relevant to the issues of this appeal. Prior to trial, Appellant filed a motion in limine to prevent Corporal Hadlock from testifying regarding the cause of the accident or the relative degree of fault of the parties. The trial court denied the motion.

When the trial began, in its opening statement, Respondent asserted Appellant's account of the phantom vehicle was a fabrication created when Appellant retained counsel in the fall of 2010. Respondent's counsel was explicit on this point:[1]

> On November 15, 2010 [Respondent] receives a letter dated November 10 from Mr. Patton. In that letter Mr. Patton says my client advises me, something to this effect, -- you're going to see the letter, it is going to be in evidence, -- something

---

[1] Respondent's attorney on appeal was not trial counsel.

4

to the effect that my client advises me that he was involved in an accident with a phantom vehicle and his property damage claim has not been paid. *The lawyer's letter is the first time [Respondent] has ever heard anything about a phantom vehicle*, and it's two and a half -- two years and seven months after the accident and 23, 24 months after the claim file has been closed. *The lawyer's gotten involved now, folks. That's what the evidence is going to show. When the lawyer gets involved the phantom gets created.*

(emphasis added). After opening statements, Appellant's counsel started the trial by calling Appellant's two children, Tracy Hyatt and Mark Richey ("Tracy" and "Mark"),[2] prior to calling Appellant himself. Tracy testified regarding Appellant's hospitalization and rehabilitation. She also stated she was present when her father talked to Respondent regarding his claim. Mark testified as to his physical observations of the accident scene and the extent of Appellant's injuries. Due to Respondent's sustained objections, Appellant was not permitted to put on any evidence regarding statements Appellant made to Tracy, Mark, or others about the existence of a phantom vehicle.[3] Subsequently, Appellant put on an offer of proof outside the presence of the jury that Tracy and Mark could testify that between March 1 and June 12, 2008, Appellant indicated he was run off the road and told Respondent he had been run off the road. Tracy testified during the offer of proof she overheard Appellant tell Poston and Sandbothe about the phantom vehicle during two separate phone calls. She further stated Appellant told "[a]nybody that would listen" about the phantom vehicle. Mark similarly testified during the offer of proof that Appellant first told him about the phantom vehicle when Appellant was released from rehabilitation, and that Appellant "always told the same story" about being run off the road.

After the testimony of Tracy and Mark, Appellant presented testimony from Jordan, who testified as stated above, and then Appellant finally testified on his own behalf. During cross-

---

[2] Because some of the parties involved have the same last name, we refer to them by their first names. No disrespect is intended.

[3] The trial court ruled the testimony was not hearsay but that statements Appellant made to parties other than Respondent were not relevant and should therefore be excluded.

examination, Respondent attacked Appellant's credibility with evidence of prior inconsistent statements. Namely, Respondent presented evidence which emphasized to the jury that Appellant pleaded guilty to the careless and imprudent driving charges, but he claimed at trial that he had been run off the road by the phantom vehicle. Despite this attack on his credibility, Appellant did not seek to recall either Tracy or Mark back to present rebuttal evidence on this point.

Respondent then put on the video depositions of Deputy Jones and Corporal Hadlock. Prior to the depositions being played, Appellant restated his objections to Corporal Hadlock's opinion testimony, which the trial court again overruled. In Corporal Hadlock's deposition, he opined Appellant was in a one-vehicle accident, and the following exchange occurred:

Q: [D]id you reach any conclusion, to a reasonable degree of certainty, accident investigation certainty, as to what occurred out there at the accident scene?

A: Yes, I did.

Q: Okay.

Q: Okay. Based upon what you saw in your investigation, what was your opinion you reached that day?

A: My opinion was that [Appellant] was just inattentive to the roadway condition at the time of the crash.

Finally, Respondent presented additional testimony from Jordan, and finished with testimony from Poston and Sandbothe.

The case was then submitted to the jury, and the jury entered a verdict in favor of Respondent. Subsequently, the trial court entered a judgment in accordance with the jury's verdict. This appeal followed.

6

## II.    DISCUSSION

Appellant brings two points on appeal.  In his first point, Appellant asserts the trial court erred by excluding testimony from Tracy and Mark regarding Appellant's prior consistent statements on the existence of the phantom vehicle.  In his second point, Appellant claims the trial court erred by allowing Corporal Hadlock to testify as to his opinion on the accident's causation.

### A.    Standard of review

The decision to admit or exclude evidence at trial lies within the sound discretion of the trial court, and we will not disturb that decision absent an abuse of discretion.  *Howard v. City of Kansas City*, 332 S.W.3d 772, 785-86 (Mo. banc 2011).  An abuse of discretion occurs when the ruling is clearly against the logic of the circumstances and is so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful, deliberate consideration.  *Id*.  Even if an abuse of discretion occurs, we will not reverse the trial court's decision unless the abuse had a material effect on the trial.  *Stokes v. National Presto Industries, Inc.*, 168 S.W.3d 481, 483 (Mo. App. W.D. 2005).

### B.    Prior consistent statements

In his first point on appeal, Appellant claims the trial court erred in excluding testimony from Tracy and Mark regarding statements made by Appellant to them and others that he was run off the road by another vehicle.  Specifically, Appellant asserts the testimony was proper evidence of prior consistent statements by Appellant offered to rehabilitate him after Respondent posited in its opening statement that the phantom driver theory was a recent fabrication or the result of improper influence.  We agree.

7

Generally, a witness' duplicitous or corroborative extrajudicial statement is inadmissible. *Anuhco, Inc. v. Westinghouse Credit Corp.*, 883 S.W.2d 910, 927 (Mo. App. W.D. 1994). "The rule exists to prevent one party from obtaining unfair advantage [over] another by presenting the same testimony in multiple forms." *Id.* (quotations omitted). However, where a witness is impeached by proof of variant acts or statements, relevant evidence of the witness' prior statements consistent with his trial testimony may be admissible for the purpose of rehabilitation. *State v. Henderson*, 666 S.W.2d 882, 890 (Mo. App. S.D. 1984). Further, a "prior consistent statement is not hearsay and is admissible if the statement is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive." *Trident Group, LLC v. Mississippi Valley Roofing, Inc.*, 279 S.W.3d 192, 199 (Mo. App. E.D. 2009) (internal quotation marks and citation omitted).

### 1.      Respondent's arguments

Respondent asserts that the testimony from Tracy and Mark was inadmissible due to the order in which the testimony was presented. At trial, Tracy and Mark both testified before Appellant. Thus, Respondent argues, the testimony was improper, because Appellant had yet to be impeached or have his credibility brought into question. In support of its argument, Respondent cites to case law which holds that prior consistent statements are only admissible after a witness has been impeached by proof of his prior inconsistencies. *Henderson*, 666 S.W.2d at 890. In other words, according to Respondent, *evidence* must be introduced tending to establish statements made by the witness which statements were inconsistent with the witness' testimony at trial. *Id.* Therefore, Respondent asserts, in order to introduce the testimony in question, Appellant was required to recall Tracy and Mark to the stand *after* Appellant testified and was impeached.

8

However, the cases relied on by Respondent for its assertion that prior consistent statements may only be offered following *evidence* of a prior inconsistent statement are not factually on point, and therefore do not control the outcome here.  Specifically, those cases address only the use of prior consistent statements in the context of inconsistencies in the witness's testimony, not in light of charges of recent fabrication or improper motive.  *See Stratton v. Kansas City*, 337 S.W.2d 927, 931 (Mo. 1961); *Anuhco*, 883 S.W.2d at 927; *Broome v. Bi-State Development Agency*, 795 S.W.2d 514, 518-19 (Mo. App. E.D. 1990); and *Henderson*, 666 S.W.2d at 889.  As recognized in *Henderson*, impeachment with a prior inconsistent statement and a charge of fabrication or improper influence or motive represent two separate and independent grounds for admission of a prior consistent statement.  666 S.W.2d at 889.  The cases cited by Respondent concern only the former ground, which is not at issue here.  As such, Respondent's reliance on these cases is misplaced, and they do not control the outcome in the case at bar.  Rather, the circumstances here address the second ground, a charge of fabrication or improper influence or motive.

### 2.      Applicable case law

Recent case law from our Court in *Trident*, 279 S.W.3d 192, and the Southern District in *State v. Campbell*, 254 S.W.3d 203 (Mo. App. S.D. 2008) addresses this issue.  As discussed below, these cases demonstrate that a charge of recent fabrication in an opening statement is sufficient to warrant the introduction of evidence otherwise classified as hearsay.

*Trident* involved the admission of an expert witness's report on a defective roof the defendant asserted was hearsay.  279 S.W.3d at 196, 198-99.  In its opening statement, the defendant charged the witness with improper influence and attacked his credibility and motive as follows:

> For their expert . . . they paid him thousands and thousands of dollars to prepare a report, but they don't give them the business to repair their buildings. He's a very interesting fellow because we know that he doesn't know basic physics and boils [sic] law. He didn't know it . . .. He had a little trouble with fundamental science.

*Id*. at 199. Later, while cross-examining another of plaintiff's witnesses, the defendant asked questions attempting to show the plaintiff hired the expert to "begin fraudulent litigation." *Id*. The expert's report did not contain any new information, and the expert testified at length as to the contents of the report. *Id*. We held the trial court did not err in admitting the report because it was admissible to "rebut an express or implied charge . . . of recent fabrication or improper influence or motive." *Id*.

The Southern District reached a similar result in *Campbell*, 254 S.W.3d 203. In that case, a prosecution witness received a plea bargain in exchange for his testimony at trial. *Id*. at 205. In his opening statement, defense counsel insinuated to the jury that the witness fabricated his testimony to protect himself from prosecution and that his testimony was influenced by the plea deal. *Id*. To rebut the fabrication claims, the State was allowed to play the witness's videotaped statement to police made prior to the plea deal. *Id*. The Southern District held the statement was admissible: "[t]he *suggestion* that a witness's testimony is recently fabricated opens the door to introduction of the witness's consistent statement made prior to the suggested fabrication." *Id*. (emphasis added).

In *Trident*, the witness was not impeached at trial nor was there any suggestion or proof he had made any prior inconsistent statement. 279 S.W.3d at 199. The report in that case was properly admitted due to the charge of fabrication and improper influence made against the witness in the defendant's opening statement and its examination of another plaintiff's witness. *Id*. "During its opening statement, [d]efendant charged [the witness] with improper influence

10

and attacked his credibility and motive" due to the "thousands and thousands of dollars" plaintiff paid him to prepare his report. *Id*. In its examination of the plaintiff's vice president, the defendant attempted to show the plaintiff hired the witness "to begin fraudulent litigation." *Id*. This was sufficient to open the door to admission of the witness's prior consistent statements as set forth in his report. *See id*. Similarly, in *Campbell*, the witness was not impeached and there is no indication in the opinion he had made any prior inconsistent statement. *See Campbell*, 254 S.W.3d at 205-06. As such, his statement was properly admitted based on the attacks contained solely in the defense counsel's opening statement. *Id*.

### 3. The circumstances of this case

The circumstances are substantially similar here. Like the opening statement concerning the witness's paid report in *Trident* and the plea bargain in *Campbell*, Respondent's opening statement here expressly charged Appellant with recent fabrication and his attorney with improper influence and motive, stating that the phantom vehicle was first "created" when Appellant contacted his attorney and counsel became involved in the case. Respondent's opening statement included the following assertion: "The lawyer's gotten involved now, folks. That's what the evidence is going to show. When the lawyer gets involved the phantom gets created." This was plainly a charge Appellant falsified his testimony after he consulted with his trial counsel, and that his testimony was thereby the result of improper influence or motive.[4] Whether Appellant was impeached with inconsistent statements is irrelevant, as neither witness

---

[4] There is also an argument that Respondent's counsel's statements were improper accusations of attorney misconduct against Appellant's counsel. When Respondent's counsel made this statement during opening argument, Appellant's counsel objected that the statement was "attacking [his] credibility" and "injecting [him] as a witness in this case." The trial court instructed Respondent's counsel to move on. Statements asserting an opposing counsel, an officer of the court, suborned perjury or aided in fabricating a client's testimony are improper and may be grounds for a mistrial. *See State v. Johnson*, 804 S.W.2d 753, 755 (Mo. App. E.D. 1990); *State v. Harris*, 662 S.W.2d 276, 277 (Mo. App. E.D. 1983). However, that argument is not before us on appeal. We caution counsel in future cases against such inflammatory accusations.

11

was impeached at all in *Trident* or *Campbell*. *See Trident*, 279 S.W.3d at 199; *Campbell*, 254 S.W.3d at 205-06.

Based on the foregoing, the trial court abused its discretion in excluding testimony from Tracy and Mark regarding statements made by Appellant to them and others that he was run off the road by another vehicle. The exclusion had a material effect on the trial, as it would have functioned as a substantial affirmation of Appellant's version of events. Point one is granted.

## C.    Hadlock's opinion testimony

In his second point and final on appeal, Appellant claims the trial court erred by admitting the portion of Corporal Hadlock's testimony in which he opined the accident was caused solely by Appellant's inattentive driving. We agree.

"Missouri courts have uniformly held that a police officer, especially if he or she did not witness the accident, cannot offer an opinion as to the fault of a party to the accident." *Khan v. Gutsgell*, 55 S.W.3d 440, 443 (Mo. App. E.D. 2001). This is because a jury will likely give undue weight to an officer's assessment of fault in a traffic accident. *Id*. This rule applies regardless of whether the officer is testifying as an expert witness or not. *Stucker v. Chitwood*, 841 S.W.2d 816, 819-20 (Mo. App. S.D. 1992).

Here, Corporal Hadlock was noticed up as an expert in accident reconstruction, though he did not perform a reconstruction in this case. In his videotaped deposition, which was played to the jury at trial, the following exchange occurred:

Q: [D]id you reach any conclusion, to a reasonable degree of certainty, accident investigation certainty, as to what occurred out there at the accident scene?

A: Yes, I did.

Q: Okay.

Q: Okay. Based upon what you saw in your investigation, what was your opinion you reached that day?

A: My opinion was that [Appellant] was just inattentive to the roadway condition at the time of the crash.

This line of questioning amounted to improper opinion evidence that there was no other vehicle that ran Appellant off the road, that this was a one-vehicle crash that involved only Appellant's motorcycle, and that the sole cause of the crash was Appellant's inattentive driving. Corporal Hadlock's opinions and conclusions were not fact testimony of what he personally observed at the scene. An expert witness's testimony should not be admitted unless it is clear that the jurors themselves are not capable of drawing correct conclusions from the facts. *Id*. at 819. "In this era of widespread highway travel and numerous highway collisions, a jury, usually composed of adult drivers for the most part, is capable of reaching its own conclusions with regard to fault and degree of fault in a case of this type." *Id*. at 820.

Based on the foregoing, Corporal Hadlock's testimony in which he opined the accident was caused solely by Appellant's inattentive driving was inadmissible, and the trial court abused its discretion in admitting it. Moreover, the testimony materially affected the outcome of the trial, as the case law recognizes an officer's opinion testimony on fault in an accident will likely be given undue weight and significantly influence the jury's resolution on the issue of liability. *Khan*, 55 S.W.3d at 443; *Stucker*, 841 S.W.2d at 820. Point two is granted.

### III.     CONCLUSION

The trial court's judgment entered in accordance with the jury verdict in favor of

Respondent is reversed and remanded for proceedings in accordance with this opinion.


ROBERT M. CLAYTON III, Presiding Judge

Lawrence E. Mooney, J., and
James M. Dowd, J., concur.

14